66 N.J. Super. 390 (1961)
169 A.2d 204
CARL FROEHLICH AND HILDEGARD FROEHLICH, PLAINTIFFS-PETITIONERS,
v.
JAMES P. WALDEN, DEFENDANT-COUNTERCLAIMANT, AND ADOLF FROEHLICH ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 16, 1961.
*391 Mr. Arthur Knaster appeared for the plaintiffs (Mr. George Kauper, attorney).
*392 Mr. Adrian M. Unger appeared for the defendant-counter-claimant James P. Walden (Messrs. Milton M. and Adrian M. Unger, attorneys).
Mr. Walter T. Wittman appeared for the defendants, Adolf Froehlich et al.
COLLESTER, J.S.C.
Plaintiffs bring this proceeding to compel the defendant, James P. Walden, the highest bidder at a sheriff's sale in a partition suit, to complete the purchase of property bid in at the sale by payment of the balance of $40,000 plus interest and charges due. The defendant counterclaims to set aside the sale, and for a return of his deposit of $5,000, or in the alternative for an abatement of part of the purchase price.
It is undisputed that the plaintiffs instituted the action for the partition of real property located in the Township of Rochelle Park; that on November 25, 1959 a judgment was entered directing the sheriff to sell the property at public sale, and that on February 8, 1960 the sheriff sold the property in accordance with law to the defendant, who was the highest bidder. Thereafter the sale was confirmed by this court but defendant refused to accept the deed and pay the balance due.
Defendant contends that there existed a mutual mistake of fact between plaintiffs and defendant concerning the dimensions, location and quantity of the land to be sold; that he relied upon representations made on behalf of the plaintiffs pertaining to the same; that the premises sold were smaller in size than represented, and that the title was unmarketable.
The pertinent facts are as follows. On July 10, 1959, seven months before the sale, George Kauper, plaintiffs' attorney, telephoned Arcola Pool, Inc., an adjoining landowner to advise the property owner of the pending partition suit in order to interest the corporation in bidding at the prospective sheriff's sale. The defendant, James P. Walden, *393 president of Arcola Pool, Inc., engaged in the telephone conversation and asked Kauper if he had a survey of the property which was to be sold. Kauper replied that he had none but that he did have a "sketch" of the property which had been attached to an earlier appraisal, and that he would send him a copy of it "for what it is worth." Defendant thereupon requested Kauper to let him know when the sale would take place and Kauper agreed. Kauper thereupon mailed to Arcola Pool, Inc., the copy of the aforesaid sketch.
Subsequently on January 5, 1960, Kauper sent a letter to Arcola Pool, Inc., advising that the sheriff's sale would be held on February 8, 1960.
With the exception of the foregoing telephone conversation and said letters, Kauper had no further contact with the defendant or Arcola Pool, Inc. When one Alfred Kiefer, defendant's attorney, telephoned him a few days before the sale to discuss the prospective sale, Kiefer refused to reveal to Kauper the name of his client. The defendant did not attend the sale in person, and it was not until Kiefer had made the highest bid and had become entitled to the purchase that Kauper or plaintiffs learned that the defendant had become the successful bidder.
Following receipt of the "sketch" from Kauper in July 1959, the defendant examined the tax assessment map of the Township of Rochelle Park where he found that the sketch was a copy of the property as appeared on said map.
The property involved consisted of three contiguous tracts, and the notices of sale published by the sheriff contained descriptions of the tracts by metes and bounds taken from the title deeds of said property. The first and second tracts, which adjoined West Passaic Street, contained metes and bounds courses which extended to and ran along the center line of said street, being subject to the public easement of the public street. It did not contain a course extending along the westerly side line of West Passaic Street, which side line was within the boundaries set forth in the metes *394 and bounds descriptions. The sheriff sold the three tracts thus described as one parcel and spirited bidding took place resulting in the defendant's purchase at the sale.
The "sketch" held by the defendant and the map contained in the tax assessment map indicated that the property line was at the westerly side line of West Passaic Street and that the frontage on West Passaic Street was 180 feet, more or less, and further that the southerly boundary of the property on West Passaic Street was 10.76 feet from the corner of Powell Avenue.
Following the sheriff's sale defendant caused a survey of the property to be made which disclosed that the frontage along the westerly side line of West Passaic Street was 169.53 feet, while the southerly boundary of the property was 21.04 feet from the Powell Avenue corner. The survey indicates that the 21.04 foot frontage separating the property from Powell Avenue was comprised of a triangular "gore" with a frontage of 10.28 feet on West Passaic Street, which was located between the subject premises and the corner property, the latter having a frontage of 10.76 feet.
Defendant claims that the West Passaic Street frontage, being less than shown on the "sketch" and the tax map, bars him from his intended use of the property fronting on West Passaic Street, namely, the creation of a subdivision to erect four two-family houses. He contends he is entitled to an abatement of a portion of the purchase price or to a vacation of the sale and return of his deposit.
The evidence clearly shows that Kauper, as plaintiffs' attorney, made no solicitation of or representation to the defendant individually. His telephone conversation and letter were directed to Arcola Pool, Inc. Kauper never had any knowledge that the defendant individually was contemplating bidding at the sale.
The evidence further shows that no "representation" was made by Kauper to Arcola Pool, Inc., or to the defendant as to the dimensions of the property or its location with respect to Powell Avenue. The "sketch" forwarded by *395 Kauper to Arcola Pool, seven months before the sheriff's sale, on which defendant claims he relied, was not forwarded by Kauper as an accurate dimensional survey of the property but was mailed as a courtesy  "for what it was worth." Admittedly, Kauper never discussed with the defendant the dimensions or location of the property on West Passaic Street.
It is apparent that the "sketch" was an identical copy of the map of the property contained in the tax assessment map of the municipality. Undoubtedly the appraiser who made an appraisal for the plaintiffs on February 10, 1958, two years before the sale, attached to the appraisal a sketch of the property as shown on said tax map.
The defendant admittedly, upon receiving the sketch in July 1959, made an independent investigation of the dimensions of the property by examining the layout and dimensions of the property as appearing upon the municipal tax map. Having done so, he cannot now contend that he relied upon any representations made by Kauper. Condon v. Sandhowe, 97 N.J. Eq. 204 (Ch. 1925); Berger v. Harrison Improvement Co., 108 N.J. Eq. 558 (Ch. 1931); John Hancock Mutual Life Ins. Co. v. Cronin, 137 N.J. Eq. 586 (Ch. 1946), affirmed 139 N.J. Eq. 392 (E. & A. 1946).
For obvious reasons, public policy ordains that the power to set aside judicial sales based upon competitive bidding should be sparingly exercised. The integrity of the process, designed as it is to secure the highest and best price in cash then obtainable for the property, demands that a sale so conducted shall be vacated only when necessary to correct a plain injustice. Karel v. Davis, 122 N.J. Eq. 526 (E. & A. 1937). Furthermore, a purchaser at a judicial sale is not ordinarily entitled to be relieved of his bid on the ground of mistake flowing from his own culpable negligence and not induced by a false representation. Such sale will be set aside only where it would be inequitable and unjust to hold the purchaser by reason of *396 fraud, accident, surprise, mistake, or irregularities in the conduct of the sale.
Here the defendant was apprised of the pending sale seven months before it occurred. He made an independent investigation of the tax assessment map. He was familiar with the appearance of the property since it adjoined the Arcola Pool property. He could have had a survey made prior to the sale. He had the opportunity of having the metes and bounds descriptions of the tracts plotted prior to the sale, since such descriptions were duly advertised in newspapers once a week for four consecutive weeks prior to the sale pursuant to the statute, N.J.S. 2A:61-1. His failure to investigate the dimensions as described in the notice of sale was negligence. When a purchaser seeks to be relieved from his contract to purchase property sold pursuant to a judgment of the court on the ground of misapprehension or mistake of fact, and it appears his error resulted entirely from his own negligence and could have been avoided by the use of ordinary prudence, such relief will be denied. See Hayes v. Stiger, 29 N.J. Eq. 196, 197 (Ch. 1878).
Here the sheriff sold and is prepared to convey to the defendant all the property described in the metes and bounds descriptions contained in the notice of sale. The defendant cannot be relieved from his purchase on the ground of his misunderstanding as to the location and boundaries of the property sold where the description of the property was contained in the notice of sale, correctly describing the property, and his attorney could have had the description read aloud by the sheriff (N.J.S. 2A:61-4), and where his misunderstanding was due to his own negligence. See Columbia Paper Bag Co. v. Carr, 116 Md. 541, 82 A. 442 (Ct. App. 1911); Clarke v. Cooper, 148 Mo. App. 230, 128 S.W. 47, 63 A.L.R. 976 (Ct. App. 1910). See also Close v. Brown, 20 A. 674 (E. & A. 1890).
Defendant's claim of mutual mistake of fact and misrepresentation admittedly pertains to the westerly street *397 line frontage, which appears on the sketch and the tax assessment map as 180 feet, "more or less." This was not the easterly course of tracts 1 and 2 described in the deeds, but was an estimated measurement of a line through a portion of the property described in the deeds. It is obvious that defendant was put on notice that said line was not an accurate measurement, since the map and sketch indicated that the 180-foot measurement was "plus or minus." Nor does the evidence show that Kauper, plaintiffs' lawyer, had any personal knowledge of the length of such frontage on West Passaic Street or that he made any representation as to the actual measurement of such line.
Nor is there any evidence of defendant's claim that the title to the property purchased was unmarketable. The fact that a "gore" with a frontage of 10.28 feet adjoins the tract on the south does not affect the marketable title of the premises sold. The statute, N.J.S. 2A:61-16, refers to the effect of a substantial defect or a cloud upon the title of the lands sold  not property outside of said tract.
I am satisfied that no misrepresentation as to the dimensions of the property sold was made by Mr. Kauper to the defendant upon which he had a right to rely; that defendant's independent investigation nullified any claim of "misrepresentation"; that defendant bid and acquired the property sold by the sheriff; that no "mutual mistake in fact" existed, and that there is no basis for defendant's contention that the property sold is unmarketable.
Accordingly, it is the decision of this court that a judgment should be entered directing that the defendant comply with his agreement to purchase made at the sheriff's sale; that he pay the balance of the purchase price plus other legal charges and interest on the unpaid balance since February 23, 1960, and that defendant's counterclaim for relief be dismissed.
An appropriate form of judgment will be submitted to the court after compliance with R.R. 4:55-1.