EAST JERSEY SAVINGS AND LOAN ASSOCIATION, PLAINTIFF,
v. RONALD J. SHATTO, ET AL., DEFENDANTS.

Superior Court of New Jersey
Chancery Division Monmouth County

Decided August 7, 1987.

*W. Peter Ragan* for defendants-mortgagors Shatto (*Blankenhorn & Ragan,* attorneys)

*Frank J. Fischer* for plaintiff (*Gagliano, Tucci, Iadanza & Reisner,* attorneys)

*Robert J. Hrebek* for Sheriff of Monmouth County (*Richard T. O'Connor,* County Counsel)

McGANN, J.S.C.

Pursuant to Final Judgment in Foreclosure and a Writ of Execution duly issued thereon, the Sheriff of Monmouth County advertised for sale premises owned by the defendants Shatto located in West Long Branch, New Jersey. The sale was held on June 15, 1987. After active bidding on the property it was

struck off to Gertie Lutzger for $117,000.00. On June 24, 1987, the defendants Shatto filed a motion objecting to the sale pursuant to *R.* 4:65–5. Notice of it was given to all interested parties. The return date was July 17, 1987. At 8:45 a.m. on July 17, they tendered to the Sheriff of Monmouth County their attorney's trust account check for $24,456.17 "for the purpose of redeeming the subject property from the foreclosure." It is agreed that that amount would have entitled the Shattos to redeem the property prior to the sale, and indeed, within 10 days after the sale, under authority of *Hardyston Nat. Bank v. Tartamella*, 56 *N.J.* 508 (1970).

*R.* 4:65–5 provides as follows:

> A sheriff who is authorized or ordered to sell real estate shall deliver a good and sufficient conveyance in pursuance of the sale unless a motion for the hearing of an objection to the sale is served upon him within 10 days after the sale or at any time thereafter before the delivery of the conveyance. Notice of the motion shall be given to all persons in interest and the motion shall be made returnable not later than 20 days after the sale, unless the court otherwise orders. On the motion, the court may summarily dispose of the objection; and if it approves the sale and is satisfied that the real estate was sold at its highest and best price at the time of the sale, it may confirm the sale as valid and effectual and direct the sheriff to deliver a conveyance as aforesaid.

The issue before the court is whether, having filed a timely motion objecting to the sale, the Shattos are entitled to redeem beyond the 10 day period under the authority of the *Hardyston* decision. The foreclosing first mortgagee and the successful bidder argue that the filing of the motion was a sham; that it was a stalling tactic used to allow the Shattos more time to gather funds for redemption and that as a matter of policy they are not entitled to the unique relief accorded in that regard by the *Hardyston* case.

In *Hardyston*, the Supreme Court in affirming the trial court's ruling that there was an unqualified right to redeem within the 10 day period after sale, held, as a matter of public policy that "the just course is to permit the mortgagor to redeem within the ten-day period fixed by R. 4:65–5 for objections to the sale and until an order confirming the sale if

objections are filed under the rule." *Hardyston*, 56 *N.J.* at 513.

On its merits the Shattos' motion objecting to the sheriff's sale is baseless. Just as there is a stated public policy favoring the mortgagor's right of redemption, so is there a public policy upholding the validity of the actions of public officials in the regular performance of their duties. *Karel v. Davis*, 122 *N.J.Eq.* 526, 529 (E. & A.1973); *Froelich v. Walden*, 66 *N.J.Super.* 390, 395 (Ch.Div.1961).

In order to set aside a judicial sale there must be a showing of fraud, accident, surprise or mistake, irregularities in the sale and the like. *Karel v. Davis*, 122 *N.J.Eq.* at 528. The burden of proof rests with the objector. 30 *N.J.Practice* (*Cunningham & Tischler, Law of Mortgages*) § 365, at 313. The power to set aside a foreclosure sale is to be exercised with great care and only when necessary for compelling reasons. *Id.*

The only proof offered by the objectors was their joint certification setting forth the following:

In January 1987 they received a copy of the Sheriff's notice of the foreclosure sale. The date listed for sale was March 2, 1987. They went to a lawyer, Epstein. He called the attorney representing the foreclosing bank. The attorney was not in his office. Epstein spoke to the attorney's secretary. He asked what liens encumbered the property. He was told (say the Shattos) that there was due on the first mortgage approximately $23,000; about $100,000 or $110,000 on the second, and about $100,000 on a third. The Shattos believed that $150,000 was the approximate fair market value of the property and decided, given the existence of the other liens, that there would be no point in redeeming the property from the first mortgage.

They state that thereafter they received telephone calls from at least 20 potential bidders and, in response to inquiries, passed along to them the information which Epstein had re-

ceived concerning the three mortgages. Those unidentified callers then told the Shattos (so their certification recites) "that it was [*sic*] obviously no point in attending the sale." With that information in mind they did not attend the sheriff's sale (which was postponed several times and which finally took place on June 15, 1987).

They further certify that they were advised after the sale by their present counsel, Ragan, "that upon his inquiry of the attorney representing First Fidelity Bank (the third mortgagee) no Answer to the foreclosure action had been filed on behalf of F.I.A. Insurance Company (the second mortgagee) for the reason that there was no debt owed to them under their mortgage encumbering the property to the extent of $100,000. . . ."

The point which the Shattos make from the foregoing is that they "were prevented from a genuine and bona fide attempt to obtain the highest and best bid price on the foreclosure sale *in that we turned down and discouraged many bidders with erroneous advice.*" (emphasis supplied). In addition and because of the misinformation they "failed to attend the sheriff's sale to further attempt to generate fair market value bidding and that the bid actually obtained was less than fair market value of the property."

Their certification is replete with hearsay and conclusionary statements for which no factual support is offered. Neither Epstein nor Ragan filed supporting affidavits. There was no proof as to the actual status of the second or third mortgages. No title report was submitted. No certification was obtained from any one of the 20 or so telephone callers. There was no proof that, prior to July 17, 1987, the Shattos had available the $24,456.17 required to redeem. There was no proof of fair value of the property as of the date of sale.

Opposing affidavits were submitted. The secretary for the foreclosing attorney recalled the telephone call from Epstein and stated that in response to his inquiry she told him that the title search in the file showed a second mortgage with F.I.A. in

the amount of $100,000 and a third mortgage with Fidelity Union Bank (now First Fidelity Bank) in the amount of $120,-000. She also advised him that only Fidelity Union Bank had filed an Answer. She gave Mr. Epstein no advice as to whether the Shattos should attend the sale. The title search attached to her affidavit shows the three mortgages open of record as of September 5, 1985.

The affidavit of the foreclosing attorney states that he attended the foreclosure sale; that it was attended by at least 25 individuals and that there was spirited bidding-up of the price by at least six different individuals.

A certification filed by the attorney for First Fidelity Bank states that on February 25, 1985 Ragan filed a Chapter 7 bankruptcy petition for the Shattos in which the F.I.A. Insurance Company is listed as holding a contingent claim of $100,-000 secured by a mortgage on the Shattos' residence. He further states that based on conversations he has had with Ragan, that Ragan was fully aware of all of the liens on the property.

I accept the truth of the successful bidder's certification in which she states that she is willing and able to pay the balance of the sale price as soon as the court confirms the sale.

The foreclosure complaint filed on February 27, 1986, lists as defendants the Shattos, F.I.A. Insurance Company and Fidelity Union Bank. It was filed only after East Jersey had obtained an abandonment of the property from the Trustee of the Shattos' assets in their bankruptcy proceeding. The First Fidelity Bank (as successor to Fidelity Union Bank) filed a non-contesting Answer. Defaults were entered against the Shattos and F.I.A. Insurance Company. The Final Judgment directed sale only to satisfy the amount due to East Jersey. First Fidelity Bank did not submit its proofs to the foreclosure unit despite being put on notice to do so. The writ of execution makes mention only of the East Jersey first mortgage.

I have no doubt at all that the Shattos and Ragan are charged with knowledge of this status of the liens on the property. See *Parkhurst v. Cory*, 11 *N.J.Eq.* 233 (Ch.1856). There was no proof that the F.I.A. mortgage had been discharged or that the indebtedness it secured had been paid or cancelled. There was no competent proof of any frustration of public bidding or that the successful bid represented other than fair value.

The motion to set aside the sale is denied. It is so lacking in merit as to be a sham. I am satisfied that it was filed solely for purposes of delay so that the Shattos would have more time to raise the money necessary to redeem. Absent the language in the *Hardyston* case set forth above, I would enter an order confirming the sale.

■■ Having thus ruled, the issue narrows to whether the language of *Hardyston* (which was dictum), to wit: "The just course is to permit the mortgagor to redeem ... until an order confirming the sale if objections are filed under the rule" is to be literally read. That determination requires a rereading of *Hardyston* to assess the meaning of the words.

The right to redemption was an equitable remedy fashioned, originally, to insure that the owner-mortgagor was not deprived of possession of his property prior to the entry of a judgment of foreclosure. The foreclosure action was the mortgagee's remedy to cut off the owner's possessory interest, *viz.*, the right to redeem. The judicial sale after final judgment was the method devised for liquidating the property and allowing the mortgagee to be paid his indebtedness while insuring the likelihood that fair value would be received so that the owner (hopefully) would not lose everything. *Carteret Sav. and Loan Assn. F.A. v. Davis*, 105 *N.J.* 344, 347-348 (1987). As noted in the *Carteret* case, courts of equity in this state, based on the traditional maxim that "Equity abhors a forfeiture" at first extended the cut-off of the right of redemption from the entry of final judgment in foreclosure to the date of the judicial sale

and then beyond—to such date as the sale was confirmed by court order after the purchaser had complied with all conditions of the sale.

*Hardyston Nat. Bank v. Tartamella,* above, arose because of the adoption of Rule 3:77–5 (later *R.R.* 4:83–5 and presently *R.* 4:65–6) effective September 15, 1948. As a matter of procedure only, the necessity for a motion and order of confirmation of sale was eliminated and the sheriff was automatically to deliver the deed (provided all conditions of sale had been complied with). The delivery of the deed thus became the final cut-off of the right of redemption—and still is. Substituted for the time gap between sale and order of confirmation under the old practice, was a minimum ten-day period to allow an objector to file and serve a motion on interested parties. The ten-day period was a minimum because the motion could still be filed thereafter so long as the sheriff had not delivered his deed. *Hardyston,* 56 *N.J.* at 511.

The rationale for the *Hardyston* conclusion is stated at 513 (citations omitted):

> The ultimate question is one of policy. We think the answer should favor the mortgagor. The right to redeem was devised by equity to protect him from the forfeiture of his title. It is a favored right ..., so much so that it may not be released in the mortgage itself or in a contemporaneous agreement ... The situations are probably rare in which a mortgagor can profitably assert a right to redeem after the sheriff's sale, but the right should be his unless some public interest would be significantly offended. More precisely, the question is whether the existence of a right of redemption until confirmation would discourage bidding. We think it would not. Hence, we believe the just cause is to permit the mortgagor to redeem within the ten day period fixed by R. 4:65–5 for objections to the sale and until an order confirming the sale if objections are filed under the rule.

The right of redemption is an equitable remedy and therefore, as with all other remedies, is discretionary, not absolute. It is to further the "Just Course" of which Chief Justice Weintraub speaks, and it should be applied, generally, to favor the mortgagor and to avoid a forfeiture. That does not mean that there will not be a final cut-off, because, as noted above, there is a public policy favoring finality, as well. It is a

familiar equitable maxim that "he who seeks equity must do equity" or, in common parlance, "fair is fair." Equity should not be used to subvert an established process.

The Shattos had the right to redeem for at least ten days after the sale, and, beyond that, until the deed was actually delivered. Delivery of the deed, here, was prevented by their notice of motion filed nine days after the sale. They did not redeem within the ten days.

Had there been a meritorious objection to the sale, then, after a judicial ruling, the sale would be set aside and they would be free, once again, to redeem. Had their objection been rejected by the Court, that would have been the end of it. And that is what *Hardyston* contemplates by the language "and until an order confirming the sale if objections are filed under the rule." It does not mean that after the ten days there would be an extended period for redemption up to the time of the decision on the motion—even though that decision might be adverse to the objector.

Here, the Shattos have sought to take advantage of a period of "time-out" between motion and ultimate decision, thereby extending the time for redemption in a fashion never contemplated by the rule, substantive law, or the policy expressed in *Hardyston*. To tolerate that imaginative approach in this case would be to open the floodgates of similar motions in other foreclosures for purposes which the equitable remedy was never intended to protect. The potential for mischievous interference with procedures that must be both orderly and final is apparent.

There are, as noted, competing policies present—that of finality as regards both titles to real property and litigation, versus that favoring redemption. Those policies are best served by clarifying the *Hardyston* language to provide that once notice of objection to the sale has been duly served and filed in accordance with *R.* 4:65–5, no further redemption or tender of

the same may be made until the motion is decided favorably to the objector.

For those reasons, an order will be entered denying the motion objecting to the sale, confirming the sale, and directing the sheriff to return the tendered redemption monies to the Shattos.