In re Edward J. RYKER, Debtor.

Edward J. Ryker, Plaintiff,

v.

David Current, et al., Defendants.

Bankruptcy No. 99–41976(NLW).
Adversary No. 00–3307(NLW).

United States Bankruptcy Court,
D. New Jersey.

Feb. 8, 2002.

Dean Sutton, Sparta, NJ, Attorney for Debtor/Plaintiff.

Richard Shapiro, Middlebrooks & Shapiro, Roseland, NJ, Attorney for Defendant.

## OPINION

NOVALYN L. WINFIELD,
Bankruptcy Judge.

### INTRODUCTION

This issue presently before the Court is whether a pre-petition sheriff's sale may be avoided as a fraudulent conveyance pursuant to 11 U.S.C. § 548(a)(1)(B) because the Notice of Sale was inaccurate. The Debtor contends that the allegedly defective notice amounted to such an irregularity that the price received on the day of the sale was not reasonably equivalent to the property's actual value. After consideration of the undisputed facts and the pertinent statutory and case authority, this Court finds in favor of the Debtor for the reasons set forth at greater length below.

This Court has jurisdiction in this matter under 28 U.S.C. § 1334, and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(H), and arises in and relates to the bankruptcy case of the Debtor also pending before this Court. The following constitutes the Court's findings of fact and conclusions of law as required by Federal Rules of Bankruptcy Procedure 7052. The Court relies not only on the certifications in the adversary case file, but also on pleadings from the main case file as well.

## STATEMENT OF FACTS

Edward J. Ryker ("Ryker" or "Debtor") filed his Chapter 13 petition on November 3, 1999. Shortly thereafter the David and Denise Current ("the Currents") filed a motion for entry of an order (i) deeming the real property to be non-estate property and (ii) granting present and prospective relief from the automatic stay. Ryker opposed the relief on the grounds that the sheriff's sale could be set aside pursuant to 11 U.S.C. § 548 due to inadequacy of price. Because Ryker made a credible showing that § 548 was applicable, the Court denied the motion and directed Ryker to file the instant adversary proceeding.

The instant bankruptcy case was preceded by a failed business venture. The property, 1040 Route 521, West Shore Trail, Stillwater, NJ ("Stillwater Property"), was purchased for the purpose of operating a restaurant and tavern. Ryker and Beverly Ackerson ("Ackerson") also entered into a partnership with the Currents. The Currents provided $200,000 for purchase of the Stillwater Property. After disputes arose among the parties, it appears that the Currents transferred their one-half interest in the Stillwater Property to Ryker and Ackerson in exchange for a note in the amount of $204,000 which was secured by a mortgage on the Stillwater Property. After Ryker and Ackerson defaulted, the Currents commenced foreclosure proceedings and they received a final judgment in foreclosure on January 11, 1999, in the amount of $216,295.25, together with counsel fees of $2,312.95, interest, and costs of suit.

A Sheriff's sale was in initially scheduled for March 15, 1999. A Notice of Sheriff's sale was published in the New Jersey Herald on February 17 and 24, and March 3 and 10, 1999. The sale was also advertised in the New Jersey Sunday Herald on February 14, 21, and 28, and March 7, 1999.

The Notice of Sale described the amount necessary to satisfy the foreclosure judgment as follows:

The approximate amount of $219,084.26, in addition to interest, Sheriff's fees and advertising costs.

After Ryker and Ackerson utilized their statutory adjournments to postpone the sale until April 12, 1999, the Currents and Ryker and Ackerson engaged in negotiations which resulted in a Forbearance Agreement dated May 24, 1999. Under the Forbearance Agreement the Currents received the sum of $150,000, payment of attorney fees amounting to $7,575.06 and establishment of an escrow amounting to $7,500 for payment of the Sheriff's Centage Fee and anticipated property taxes. Additionally, Ryker and Ackerson were obligated to make monthly payments of $1,654.34 based on a five year amortization with a one year balloon. In return, the Currents agreed to adjourn the sale on a monthly basis up to a final date of May 29, 2000. If a default occurred, the Forbearance terms were deemed to automatically terminate.

Monthly payments were made until October, 1999. The October 1, 1999 payment was not made and the Sheriff's sale was held on October 25, 1999. On the sale date counsel for the Currents advised the Sheriff that a credit of $169,605.40 should be given against the amount due of $219,084.26 listed in the Notice of Sale. The Currents were the successful bidders at the Sheriff's sale, bidding $100.00 over their lien. The record does not reveal that any other bidders were present or that any other bid was made for the Stillwater Property.

A few months after the bankruptcy case was filed, the Stillwater Property was sold to a third party purchaser pursuant to 11 U.S.C. § 363. The Stillwater Property and a Class C Liquor License were sold

for a total of $240,000. The liquor license was valued at $25,000, and the real property was valued at $215,000.

After the adversary complaint was filed and served, the Currents moved to dismiss the complaint or in the alternative for the Court to abstain pursuant to 28 U.S.C. § 1334(c). This motion was denied by the Court. In response to the Currents' motion to dismiss, Ryker cross-moved for summary judgment. In the adversary proceeding complaint Ryker maintains that the Sheriff's sale is voidable because (i) the Currents did not give notice of the October 25th sale date to him and Ackerson at the correct address, (ii) the sale was not advertised in two separate newspapers as required by New Jersey Court Rules, and (iii) the final sale date should not have been held without first re-advertising the sale to reflect that payments of $169,605.40 had been made on the foreclosure judgment, and that only the approximate amount of $49,478.86 remained to be satisfied from the sale of the property. In his cross-motion Ryker limits his request for judgment to the contention that the Sheriff's sale is voidable because the sale was not re-advertised.

## DISCUSSION

### A. *Summary Judgment Standards*

■ In determining whether to set aside a foreclosure sale under 11 U.S.C. § 548(a)(1)(B), the Court must consider whether the transfer was indeed a fraudulent conveyance as defined by the Bankruptcy Code. The purpose of this section is to "recover for the estate assets that could be distributed to unsecured creditors, equity secured creditors, or to the debtor as exempt property" and to "rectify prepetition depletion of the debtor's estate." *See In re Brasby*, 109 B.R. 113, 121 (Bankr. E.D.Pa.1990).

In the present motion, the Debtor argues that the foreclosure sale of the Stillwater Property should be set aside because the sale should have been re-advertised to reflect that the amount due had been reduced by some $169,000. Because the sale was not re-advertised, the Debtor argues not only that the Notice of Sale was incorrect and misleading, but also that the advertisement of the property did not meet the requirements set forth in *R.* 4:65–2 and *N.J.S.A.* 2A:17–34. *R.* 4:65–2 provides, in pertinent part:

> If real or personal property is authorized by court order or writ of execution to be sold at public sale, notice of the sale shall be posted in the office of the sheriff of the county or counties where the property is located, and also, in the case of real property, on the premises to be sold, but need not be posted in any other place.

*R.* 4:65–2.

*N.J.S.A.* 2A:17–34 provides:

> All advertisements for the sale of real estate by virtue of executions issued out of any court of this state shall state the approximate amount of the judgment or order sought to be satisfied by the sale.

*N.J.S.A.* 2A:17–34.

In opposition to the Debtor's motion, the Currents argue, *inter alia*, that the Sheriff's foreclosure sale was properly conducted under New Jersey state law. The Currents contend that the Sheriff posted the notice in his office as required by the statute, and the price of the Debtor's property was correct and not defective at the time the sale was originally advertised. Further, since the original publication reserved the right to adjourn the sale, the Sheriff was not required to readvertise the sale, and summary judgment should not be granted in the Debtor's favor.

Summary judgment under *Fed.R.Civ.P.* 56(c), made applicable to bankruptcy adversary proceedings by *Fed.R.Bankr.P.* 7056, is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). " 'Inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). Since both Ryker and the Currents are in agreement regarding how the foreclosure sale was noticed, and how the Sheriff conducted the bidding on the sale date, the question of whether the sale should have gone forward on October 25, 1999 may be disposed of on Ryker's summary judgment motion.

## B. *The Foreclosure Sale as a Fraudulent Transfer*

▮▮▮ Section 548 of the Bankruptcy Code sets forth the power of a trustee in bankruptcy to avoid fraudulent transfers. *See* 11 U.S.C. § 548. Specifically, this section "permits avoidance if the trustee can establish (1) that the debtor had an interest in the property; (2) that a transfer of that interest occurred within one year of the filing of the bankruptcy petition; (3) that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) that the debtor

received 'less that a reasonably equivalent value in exchange for such transfer.' " *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 535, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) citing 11 U.S.C. § 548(a)(2)(A).[1] It is the last of these four elements that Ryker focuses upon in his argument to set aside the October 1999 sheriff's sale.

In *BFP,* the United States Supreme Court addressed the issue of whether under Section 548 a foreclosure sale could be voided as having resulted in less than a reasonably equivalent value. In the *BFP* case the first mortgagee obtained a foreclosure judgment and sold the home at a foreclosure sale to a third party purchaser for $433,000. Thereafter, the homeowners filed for bankruptcy under Chapter 11 and commenced an adversary proceeding based on § 548 to set aside the sale to the third party purchaser on the ground that the foreclosure sale constituted a fraudulent conveyance. The homeowners claimed that at the time of the foreclosure sale the property was worth over $725,000, and that the foreclosure sale thus resulted in "less than reasonable equivalent value" being received. In holding that there was no reason to void the sale, the Court first cautioned that the phrase "received less than reasonably equivalent value in exchange requires judicial inquiry into whether the foreclosed property was sold for a price that approximated its worth at the time of the sale." *Id.* at 538–539, 114 S.Ct. 1757. Importantly, the Court pointed out that market value cannot be the criterion of equivalence in a foreclosure sale context since property that is sold pursuant to the terms and conditions of a foreclosure sale is simply worth less. *Id.* at 539–540, 114 S.Ct. 1757.

The *BFP* Court then held that it

---

**1.** In 1998, this section was amended by the Religious Liberty and Charitable Donation Protection Act of 1998 to prevent a trustee from challenging a good faith charitable gift as a fraudulent transfer. As a consequence of that amendment, former § 548(a)(2)(A) is now § 548(a)(1)(B).

decline[s] to read the phrase 'reasonably equivalent value' in § 548(a)(2) to mean, in its application to mortgage foreclosure sales, either 'fair market value' or 'fair foreclosure price' (whether calculated as a percentage of fair market value or otherwise). We deem, as the law has always deemed, that a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with.

*Id.* at 545, 114 S.Ct. 1757.

Though the holding in *BFP* narrowed the grounds on which § 548 could be used to invalidate a foreclosure sale as a fraudulent transfer, it did not completely eliminate its utility. The Supreme Court noted that § 548(a) would likely provide the authority to attack a collusive foreclosure sale as a fraudulent transfer. *Id.* More importantly for the matter at hand, it stated that:

Any irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law deprives the sale price of its conclusive force under § 548(a)(2)(A), and the transfer may be avoided if the price received was not reasonably equivalent to the property's actual value at the time of the sale (which we think would be the price that would have been received if the foreclosure sale had proceeded according to law).

*Id.*, at 545–546, 114 S.Ct. 1757.

Thus, under *BFP*, this Court must determine whether the foreclosure sale of the Stillwater Property is avoidable under the foreclosure law of the State of New Jersey. If the Court finds this to be the case, under *BFP*, the sale may be avoided pursuant to § 548(a)(1)(B) as a fraudulent transfer.

Pursuant to *N.J.S.A.* 2A:17–34 the Notice of Sale must specify the approximate amount of the judgment to be satisfied by the sale. Additionally, R. 4:65–2 requires not only that the sale be advertised in the newspapers, but also that the Notice of Sale be posted in the sheriff's office. It appears that the sale was advertised in February and March of 1999, and was not thereafter readvertised. It also appears that beginning in February, 1999 the Notice of Sale for the Stillwater Property, stating the approximate amount due as $219,084.26, was posted in the Sheriff's Office and that same Notice of Sale remained there until the foreclosure sale in October, 1999. Ryker argues that because the Currents did not advise the Sheriff in May, 1999 that they received $150,000 from him and Ackerson, from that point forward until the sale in October, 1999, the posted notice was inaccurate and misleading. Ryker also contends that on October 25, 1999, when the Sheriff learned that Ryker and Ackerson were entitled to a credit of $169,605.40, he should have declined to go forward with the sale until it was re-advertised, to give notice that only approximately $50,000 was due. Ryker insists that by conducting the foreclosure sale on October 25, 1999 both the statute and rule were violated and the sale should be voided.

The Currents point out that nothing in either the statute or the rule required that the sale be re-advertised in the newspapers or that a corrected notice be posted in the Sheriff's office. They point out that the Sheriff did in fact comply with the literal terms of both the statute and rule. Moreover, the Currents note that the Notice of Sale provided that the sale was to be held on "March 15, 1999 or the adjourned date thereafter," and that under *N.J.S.A.* 2A:61–6 no further notice of ad-

journment was needed.[2] Finally, as permitted by R. 4:65–4 [3], at the original sale date, the Sheriff announced that the sale was adjourned and gave the new sale date. Accordingly, the Currents conclude that given the Sheriff's compliance with the court rules and statute, no basis exists to void the sale.

Resolution of this matter cannot be had solely by reference to the New Jersey statutes and court rules just cited. They do not answer the question of whether the Sheriff should have re-advertised the sale, notwithstanding that neither the statute nor the court rules explicitly direct him to do so. Rather, the court must also consider the particular factual circumstances before it and the substantial body of case authority treating foreclosure sales and the protection of the rights of the parties affected by such sales.

Indeed, the critical facts before the Court are somewhat unique. Most importantly, by October 25, 1999, when the foreclosure sale went forward, Ryker and Ackerson had paid to the Currents over 75% of the outstanding amount due. At the sale there were no other bidders, and the Currents' successful bid was $100, plus the amount of their unsatisfied judgment lien (approximately $50,000). That there was considerable equity in the Stillwater Property as a result of the payment made by Ryker and Ackerson is readily apparent from the fact that just a few months later the Stillwater Property was sold in this Court for the sum of $215,000.

It is well-settled in New Jersey that the purpose of a public sale is "to obtain the highest price for the benefit of the foreclosing mortgagee, other junior lienholders and, perhaps, the owner mortgagor." *Investors & Lenders, Ltd. v. Finnegan,* 249 N.J.Super. 586, 592, 592 A.2d 1244 (Ch.Div.1991), See also, *Carteret Savings & Loan Association, F.A. v. Davis,* 105 N.J. 344, 348, 521 A.2d 831 (1987)(the judicial sale developed as a means of assuring that a fair value would be received for the property); *East Jersey Savings & Loan Association v. Shatto,* 226 N.J.Super. 473, 479, 544 A.2d 899 (Ch.Div.1987); *Froehlich v. Walden,* 66 N.J.Super. 390, 395, 169 A.2d 204 (Ch.Div.1961).

It is equally evident that setting aside judicial sales should be done sparingly.

The integrity of the process, designed as it is to secure the highest and best price in cash then obtainable for the property demands that a sale so conducted shall be vacated only to correct a plain injustice.

*Karel v. Davis,* 122 N.J.Eq. 526, 529, 194 A. 545 (1937), See also, *Froehlich v. Walden,* 66 N.J.Super. at 395, 169 A.2d 204; *East Jersey Savings & Loan v. Shatto,* 226 N.J.Super. at 476, 544 A.2d 899. The underlying reasoning is that bidding is encouraged by "giving to every bidder the benefit of bids made in good faith and without collusion or misconduct." *Federal*

**2.** The statute provides, in pertinent part: If a sale of real estate governed by this chapter is adjourned for more than 1 week, notice thereof shall be published once within 1 week after the date of the adjournment in the newspapers in which the original notice of the sale was published *unless the original advertisement of the sale specifically reserved the right to adjourn the sale, in which case no further notice need be published* . . .
N.J.S.A. 2A:61–6 (emphasis added).

**3.** The rule provides: Unless the court otherwise orders, all public sales in any action shall be held at the place where the sheriff usually makes such sales, or at the premises to be sold. *The sheriff, receiver or other person may continue such sale by public adjournment, subject to the limitations and restrictions as are provided specifically therefor.*

R. 4:65–4 (emphasis added).

*Title & Mortgage Guaranty Co. v. Lowenstein, et al.,* 113 N.J.Eq. 200, 206, 166 A. 538 (Ch.1933). Accordingly, it is also well-recognized that inadequacy of price alone does not warrant the vacation of a foreclosure sale.

> To justify this form of relief, it is essential that the price be so grossly inadequate as to support the inference of fraud, or to shock the judgment and conscience, or be accompanied by an independent substantive ground for equitable relief, such as fraud, accident, surprise, irregularity in the sale, and the like, making confirmation inequitable and unjust to one or more of the parties.

*Karel v. Davis,* 122 N.J.Eq. at 530, 194 A. 545, See also, *Crane v. Bielski,* 15 N.J. 342, 346, 104 A.2d 651 (1954).

■ Where an inadequate price is determined to be a product of inadequate noticing of the sale or to result from an error in the manner in which the sale was conducted, courts have found it appropriate to vacate a foreclosure sale. For example, in *Burger v. Dumas,* 25 N.J.Super. 473, 476, 96 A.2d 718 (Law Div.1953) the sheriff's sale was set aside because the sheriff erroneously announced the existence of a judgment lien and failed to disclose the amount due on the mortgage. The court determined that the effect of these failures was to thwart competitive bidding. *Id.*

The sufficiency of the advertisement of sale was also considered in *Hodgson v. Farrell,* 15 N.J.Eq. 88, 1862 WL 2733 (N.J.Ch.). In *Hodgson,* although the notice of sale was found to be deficient, the court denied the motion to set aside the sale because the various liens against the property made illusory the prospect for competitive bidding. *Id.,* at *3. However, because the court considered the notice deficiencies grave enough to have warranted setting aside the sale, it is worthwhile to consider the discussion in *Hodgson* regarding the imperfections in the notice of sale. The court in Hodgson found that "the advertisement was not only defective, but was calculated to mislead, "because the property was essentially described as land and water rights, when in fact the property also consisted of "a new and extensive paper mill and machinery, a saw mill, mansionhouse, store, and twenty dwelling-houses." *Id.,* at *2. The critical failure in the notice of sale was that it failed to adequately inform the public about what was being sold. The court framed the issue as follows:

> The question in not whether the advertisement is a technical compliance with the requirement of the statute, or whether the defect is such as to invalidate the title in the hands of the purchaser, but whether the character of the description, in connection with the fact that there were no bidders at the sale, and that the property sold at a very inadequate price, does not make the sale constructively fraudulent, as against the defendant in execution or others having liens upon the property, and does not, on the account, constitute a ground of equitable relief.

*Id.,* at *3.

Similarly, in *Cummins v. Little,* 16 N.J.Eq. 48, 1863 WL 2615 (N.J.Ch.) the court voided a sale in part because the sale notice did not give adequate notice to bidders and produced an inadequate price. The court noted that as required by the statute the sale was noticed in five public places, but none were in proximity to the property being sold. *Id.,* at *3–*4. In finding that the notice of sale was insufficient, the court observed that the Sheriff was "bound to conduct it so as to protect the rights and promote the interests of all the parties in interest, and to secure, as

far as practicable, the most general diffusion of the notice of sale." *Id.,* at *4.

█ The question posed by the court in *Hodgson* and also addressed by the court in *Cummins* is the same as confronts this court. It is evident that regardless of what the nature of the deficiency is, the bottom line consideration must be whether that deficiency impaired the conduct of the sale to the detriment of all parties whose interests are affected by the sale. In this matter, as in *Hodgson* and *Cummins,* there was literal compliance with the governing statutes and court rules. As required, the sale of the Stillwater Property was both advertised and posted. And, it is certainly true that nothing in either the court rules or the statute required that the sale be re-advertised or posted anew. However from February, 1999, when the property was noticed for sale with outstanding judgment debt of approximately $219,084.26, to the sale date on October 25, 1999 payments of $169,605.40 were made. Thus, in contrast to February, 1999, by October 25, 1999, there was substantial equity in the property, and it is readily apparent that the potential bidding public was unaware of this fact because there was no re-advertisement of the sale and the posted notice did not reflect the judgment debt. Only the Currents bid at the sale and for approximately $50,000 they received property with a value in excess of $200,000. The sale price certainly was inadequate, and the inadequacy of the price was likely a result of the lack of competitive bidding. Further, the lack of competitive bidding was due in significant measure to the failure to provide notice of the actual outstanding debt prior to the sale.

It is important to note that over the years the scope of what should be included in the notice of sale and who is entitled to notice has steadily broadened. For exam-

ple, in *New Brunswick Savings Bank v. Markouski,* 123 N.J. 402, 423–24, 587 A.2d 1265 (1991) The New Jersey Supreme Court held that a levying judgment creditor must provide actual notice of the execution sale to other judgment creditors whose names and addresses can be determined after "reasonably diligent effort." The court's holding rested on its conclusion that a judgment lien is a property interest subject to due process protections. *Id.,* at 422, 587 A.2d 1265. Moreover, in *Summit Bank v. Thiel,* 162 N.J. 51, 52, 740 A.2d 139 (1999) the court held that although a mortgagee is not obligated to update tax lien information if a foreclosure sale is adjourned, it is required to insert in notices of sale the amount of delinquent taxes due as of a specific date. Finally, in *First Mutual Corporation v. Samojeden,* 214 N.J.Super. 122, 127–28, 518 A.2d 525 (App.Div.1986), the court held that the foreclosing mortgagee could not direct the sheriff to sell property without first notifying other parties in interest of the adjourned sale date.

The *Samojeden* case is particularly relevant to the matter at hand. In that case, the second mortgagee, First Mutual Corporation ("First Mutual") obtained a foreclosure judgment in May, 1984. Its certification of proof showed an amount of $6,000, and the certification of proof for the third mortgagee, Telmark, Inc. ("Telmark") showed an amount due of approximately $31,000. The property was scheduled for sale, and First Mutual gave certified mail notice of the sale date to the property owners and Telmark. *Id.,* at 124, 518 A.2d 525. Just prior to the sale date Telmark's attorney was advised by First Mutual's attorney that the sale would be continued on a month to month basis because the Samojedens had paid the arrearages to First Mutual. Accordingly, Telmark did not attend the sale.

After the original sale date the Samojedens made monthly payments to First Mutual, which in turn, continued the sale date on a monthly basis until July 7, 1985 when the sale actually occurred. *Id.*, at 125, 518 A.2d 525. First Mutual conceded that it did not give any notice of the sale to any of the interested parties. First Mutual was the only bidder, bidding $100 over its lien. The property had an appraised value of $78,000. *Id.* Telmark moved to vacate the sale, claiming that if it had notice of the sale it would have appeared to bid in order to protect its position. *Id.* The trial court denied its application and Telmark appealed.

The Appellate Division overruled the lower court. The appellate court recognized that the New Jersey court rules do not explicitly require that interested parties be given notice of the adjourned sale dates. However, it declared that

> we are nevertheless persuaded that their implicit predicate is the affording of actual knowledge of the effective sale date to those persons whose interests would be irrevocably affected by the sale and, most particularly, the owners and encumbrancers of the property whose equity and investment are likely to be lost unless they take the protective action of either redeeming after the sale or purchasing at the sale. We so conclude for obvious jurisprudential reasons. Effective notice is the cornerstone of procedural due process. Our rules of court are constructed on that cornerstone and the focus of their interpretation must be consistent with that overriding concern.

*Id.*, (citations omitted).

The court noted that because of the lack of notice the Sheriff's sale was tantamount to a private sale to First Mutual "since members of the public at large who might have been interested in attending the sale and bidding for the property could hardly

have been expected to respond to a publication and posting effected 13 months previously and directed to a date long since past." *Id.*

Notably, in making its ruling the court took care to state that it was not addressing whether, and under what circumstances, notice of the adjourned sale is required to be re-advertised or reposted or served in compliance with *R.* 4:65–2. *Id.*, at 129, 518 A.2d 525. This court also declines to make any general pronouncement regarding when an adjourned sale must be re-advertised or re-posted. However, the facts of this case warrant such relief because of the combination of the length of the adjournment and the sizable reduction in the outstanding debt in that time period.

 In significant measure, relief is warranted because the debtor's equity of redemption was completely impaired. A mortgagor's equity of redemption is understood to constitute an equitable estate in land that is alienable, divisible, and descendible. *Lobsenz v. Micucci Holdings, Inc.*, 127 N.J.Super. 50, 52, 316 A.2d 59 (App.Div.1974); *See also, Carteret Savings & Loan Association v. Davis*, 105 N.J. 344, 347, 521 A.2d 831 (1987); *In re Mocco*, 176 B.R. 335, 345 (Bankr.D.N.J.1995). In New Jersey it is a favored right, and cannot be released in the mortgage itself or a contemporaneous document. *Hardyston Nat'l Bank of Hamburg v. Tartamella*, 56 N.J. 508, 513, 267 A.2d 495 (1970). Unquestionably then, this property interest must be understood to be at least as valuable as the property interest of a junior mortgagee such as Telmark, and entitled to at least as much due process protection. In the context of this case, that means that the Sheriff's sale should have been advertised and posted in a manner designed to insure the opportunity for competitive bidding. It was not, and the sale price was

inadequate. Therefore, the sale must be vacated.

### CONCLUSION

As set forth at greater length in the preceding paragraphs, the Court finds that the foreclosure sale of the Stillwater Property was not conducted in accordance with New Jersey foreclosure law and may be avoided. Accordingly, pursuant to § 548(a)(1)(B) the foreclosure sale is avoided as a fraudulent transfer.