214 N.J. Super. 122 (1986)
518 A.2d 525
FIRST MUTUAL CORPORATION, PLAINTIFF-RESPONDENT,
v.
THOMAS R. SAMOJEDEN AND MARY ANN R. SAMOJEDEN, HIS WIFE, AND AGWAY, INC., A DELAWARE CORPORATION, DEFENDANTS, AND TELMARK, INC., A NEW YORK CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 5, 1986.
Decided December 3, 1986.
*123 Before Judges PRESSLER, BAIME and ASHBEY.
Eisenstat, Gabage & Berman, attorneys for appellant (Charles W. Gabage, of counsel; Harry Furman, on the brief).
Gary W. Stuhltrager, attorney for respondent.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This appeal raises a novel issue respecting notice requirements for an adjourned sheriff's sale conducted pursuant to R. 4:65. Although both R. 4:65-2 and R. 4:65-4 are silent on the question, we hold that as a matter of fundamental fairness these rules must be construed as entitling interested parties to actual knowledge of the adjourned date upon which the sale actually takes place.
The facts giving rise to this controversy are largely undisputed. Defendants Thomas and Mary Ann Samojeden were the owners of real property in Vineland, New Jersey, on which Howard Savings Bank held a first mortgage, plaintiff First Mutual Corporation held a second mortgage, and defendant Telmark, Inc. held a third mortgage. In June 1983 Howard Savings instituted a foreclosure action against the owners and *124 the two junior encumbrancers, both of whom filed answers and joined in the demand that the property be sold. Final judgment was entered in September 1983, which recognized the interests of the junior encumbrances. The judgment was, however, vacated with their consent when Howard Savings renegotiated the mortgage debt with the owners. In January 1984 the second mortgagee, plaintiff First Mutual, filed its foreclosure complaint against the owners. Defendant Telmark, the third mortgagee, filed an answer. The judgment of foreclosure was entered in May 1984. First Mutual's certification of proof showed an amount due on its loan of about $6,000 and Telmark's certification of proof showed about $31,000 due on its loan. First Mutual proceeded to take the requisite steps to effect a sheriff's sale and, insofar as the record shows, both the owners and Telmark were provided with a certified mail notice of a sale scheduled for June 29, 1984, as required by R. 4:65-2, which provides in pertinent part that
If, in any action, real or personal property is authorized or ordered to be sold at public sale, the notice of the sale shall be posted in the office of the sheriff of the county or counties where the property is located, and also, in the case of real property, on the premises to be sold, but need not be posted in any other place. At least 10 days prior to the date set for sale, a notice of sale of real property shall be mailed by registered or certified mail, return receipt requested, by the party who has procured the execution or order for sale to every party who has appeared in the action or served a pleading and to the owner of record of the property as of the date of the commencement of the action whether or not he has appeared in the action. Failure to mail such notice shall not affect the title to the property.
Shortly before the scheduled date, a paralegal in the office of Telmark's attorney telephoned First Mutual's attorney to inquire as to the status of the sale. She was advised, as she asserts in her affidavit, that "at that time ... Mr. and Mrs. Samojeden had paid the arrearages on the obligation due to the plaintiff and that the foreclosure sale was to be continued on a month to month basis." Accordingly, Telmark did not attend *125 the sale, which had in fact been adjourned.[1] It further appears that following the original date set for the sale, the owners did make monthly payments to First Mutual, which opted, for about a year, to continue to adjourn each monthly rescheduled sale. For reasons which do not appear in the record, First Mutual nevertheless decided not to adjourn the sale scheduled for July 7, 1985, and it was in fact held on that date although First Mutual concedes that neither it nor the sheriff gave any notice thereof, either formal or informal, to any of the interested parties, none of whom had any actual knowledge thereof. First Mutual was the only bidder and purchased the property, which then had an appraised value of approximately $78,000, for $100.
The owner Thomas Samojeden had assumed that no sale would take place so long as he continued to make his monthly payments. His first notice of the July 1985 sale came by way of service upon him of a post-sale writ of possession. He promptly retained counsel who promptly initiated proceedings to set the sale aside. His application was supported not only by his own affidavit stating those of the above facts within his knowledge but also by an affidavit of Telmark's attorney confirming those facts and joining in the owner's request for relief. Samojeden's motion for vacation of the sale was denied, and, accordingly, Telmark made its own application for that relief, asserting that if it had had knowledge of the sale it would certainly have appeared and bid in order to protect its own interest. That application was denied as well, and it is from that denial that Telmark now appeals.[2]
*126 The sole question before us is whether a notice of sale given pursuant to R. 4:65-2 binds the noticed parties for all time thereafter, irrespective of when the sale is actually held and irrespective of their actual knowledge of the eventual sale date. The trial judge concluded that it does, thereby shifting to those parties the burden of themselves inquiring as to all adjourned dates and ascertaining whether the judgment creditor actually intends the sale to proceed on any of those dates. We disagree.
Although we recognize that our rules do not expressly provide for the giving of notice of adjourned sales, we are nevertheless persuaded that their implicit predicate is the affording of actual knowledge of the effective sale date to those persons whose interests would be irrevocably affected by the sale and, most particularly, the owners and encumbrancers of the property whose equity and investment are likely to be lost unless they take the protective action of either redeeming after the sale or purchasing at the sale. Cf. Hardyston Nat. Bank v. Tartamella, 56 N.J. 508 (1970). And see Carteret Sav. & Loan Ass'n, F.A. v. Davis, 200 N.J. Super. 167 (App.Div. 1985); Lobsenz v. Micucci Holdings, Inc., 127 N.J. Super. 50 (App.Div. 1974). We so conclude for obvious jurisprudential reasons. Effective notice is the cornerstone of procedural due process. Our rules of court are constructed on that cornerstone and the focus of their interpretation must be consistent with that overriding concern.
Guided by that principle, we are persuaded that the applicable rules themselves support our conclusion. Thus, in our view, the failure of R. 4:65-2 expressly to provide for the giving of notice of an adjourned sale does not bespeak an intention that no such notice need be given. This is so because R. 4:65-2 does not address the adjournment of sale at all. The primary significance of R. 4:65-2 is its basic prescription that the sale be attended by the requisite notice and the perception of the courts that absent the required notice the sale may be set aside. See Orange Land Company v. Bender, 96 N.J. Super. 158 (App. Div. 1967). The subject of adjourned sales is treated by R. 4:65-4, which provides in this respect only that "[t]he sheriff, *127 receiver or other person may continue such sale by public adjournment, subject to such limitations and restrictions as are provided specially therefor." Although it is thus true that R. 4:65-4 does not expressly require notice of the adjourned sale either, we find that requirement to be implicit in the stipulation that the adjournment be public. We deem it fairly inferable that the requirement of a public adjournment was intended not only to give notice to those attending the sale of the fact of adjournment but also notice of the date of the adjourned sale. Compare Marine Bank v. Huhta, 279 Pa.Super 130, 420 A.2d 1066 (1980).
We are aware that the formality of public adjournment is often dispensed with, as it apparently was here, and that as a matter of customary practice, the sheriff ordinarily simply defers to the request of the judgment creditor respecting adjournments. The fact, however, that this is the way matters are customarily managed for purposes of convenience and expedition cannot provide justification for a practice which prejudices the substantial rights of interested parties and subverts their opportunity to protect their legitimate interests. Indeed, what happened here was tantamount to a private sale to First Mutual since members of the public at large who might have been interested in attending the sale and bidding for the property could hardly have been expected to respond to a publication and posting effected 13 months previously and directed to a date long since past. And, more egregiously, the owner and junior encumbrancer could hardly have been expected to attend a sale which they reasonably believed would not take place at all as long as the owner remained current in his monthly obligation, which he did. In short, the conduct of First Mutual, whether intended or not, deprived the interested parties not only of the opportunity directly to protect themselves but also of the benefits which competitive bidding at a public sale was intended to provide. See, e.g., Fidelity Union Bank v. Trim, 210 N.J. Super. 476, 480 (App.Div. 1986).
*128 Nor can we conclude, at least in the circumstances here, that the owner and third mortgagee were obliged during the 13-month period to continuously monitor First Mutual's intentions respecting a sale by making periodic inquiry of First Mutual or the sheriff's office. To begin with, First Mutual had permitted a status quo to develop upon which the interested parties reasonably relied. There was thus no reason for any further inquiry to be made. Moreover, the decision as to whether there was actually going to be a sale and, if so, when, was First Mutual's alone. It is obviously more sensible to require it to advise the interested parties of its definitive decision than it is to require the interested parties to keep asking it if it had yet made one. We reject First Mutual's suggestion that imposing a continuing notice obligation upon an executing mortgagee would constitute so severe an onus as to discourage it from consenting to adjournments of sale requested by a mortgagor who is attempting to save his equity by refinance or other arrangements. It is patent that requiring the executing mortgagee to make one definitive communication to interested parties imposes a substantially lesser burden on it than the burden of having to respond to the regular and periodic inquiries to which those parties would otherwise have to resort.
We do not intend to suggest that notice of the adjourned sale must in all circumstances necessarily meet the formal requirements imposed by R. 4:65-2. It has been held, and we concur, that it is actual knowledge of the date of the adjourned sale which is dispositive. See In re Eagleson Estate, 172 N.J. Super. 98 (App.Div. 1980), certif. den. 84 N.J. 431 (1980). And see Heinzer v. Summit Fed. S. & L. Ass'n, 87 N.J. Super. 430 (App.Div. 1965). We are, however, satisfied that after the passage of the time here involved, First Mutual was not at liberty to direct the sheriff to sell the property without having made some reasonable communication of that fact to the other parties in interest. Since it did not, and since neither the owner nor the *129 subsequent encumbrancer had any actual knowledge of the sale, and since there were no intervening rights of innocent third persons,[3] we are satisfied that the trial judge should have vacated the sale.
We need not address the issue, not here raised, as to whether at all and, if so, under what circumstances, notice of an adjourned sale is required to be readvertised or reposted or served upon parties in a formal manner in compliance with R. 4:65-2. We do, however, note that other jurisdictions have resolved these questions by varying statutory approaches. For example, New York law requires the sheriff to give notice of the postponed date to those interested persons who have made timely written request for that information but dispenses with reposting and republication. N.Y.Civ.Prac.Law § 5236(d) (McKinney 1978). Pennsylvania law requires formal renotice if the adjourned sale is held more than 45 days after the original date; if the adjourned sale is held within 45 days, actual notice to interested parties by public announcement made at the original sale suffices. See Pa.R.Civ.P. 3129(d). We are satisfied that our own rules might well be amended to provide specifically for notice of adjourned sales and we recommend consideration by the Supreme Court of an appropriate amendment.
In view of our disposition, we do not address Telmark's final argument respecting the continued viability of the writ of execution here issued.
The order denying Telmark's application to vacate the sale is reversed, and we remand to the trial court for the entry of an appropriate judgment.
NOTES
[1] Since, however, its obligation remained in default, Telmark instituted its own foreclosure action in August 1984, alleging a balance due of some $25,000. Neither the further progress of that foreclosure action nor its ultimate disposition is disclosed by this record.
[2] Defendant Samojeden did not appeal, and we have no indication that he is asserting any continuing interest in this matter.
[3] Pending and prior to any disposition of the property by First Mutual, First Mutual and Telmark consented to the entry of an order requiring First Mutual to create an interest-bearing escrow account in the amount of the approximate balance of the debt due Telmark to protect Telmark's interest in the event of a consequent sale by First Mutual.