**In the Matter of Edward J. RYKER, Debtor.**

**Edward J. Ryker, Plaintiff,**

v.

**David and Denise Current, Defendants.**

Civ.A. No: 02–3928 (JCL).

United States District Court,
D. New Jersey.

Aug. 13, 2003.

Richard P. Shapiro, Middlebrooks & Shapiro, Roseland, NJ, for Appellant.

Dean G. Sutton, Sparta, NJ, for Appellee.

## MEMORANDUM AND ORDER

LIFLAND, District Judge.

This is an appeal from an Order of the United States Bankruptcy Court for the District of New Jersey, which granted a Chapter 13 debtor's cross-motion for summary judgment and set aside a foreclosure sale as a fraudulent transfer pursuant to

11 U.S.C. § 548(a)(1)(B). For the following reasons, the matter is remanded to the Bankruptcy Court to determine whether the Chapter 13 debtor had standing to bring a fraudulent transfer action pursuant to 11 U.S.C. § 548. In addition, the Court, in an effort to promote judicial efficiency, will discuss the Bankruptcy Court's grant of the Chapter 13 debtor's cross-motion for summary judgment. Were the Court to decide the merits of this matter, the Court would likely conclude that the Bankruptcy Court's grant of summary judgment was proper and that the foreclosure sale should be set aside as a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

## BACKGROUND

This case arises out of the bankruptcy proceedings of Edward J. Ryker ("Ryker" or "Debtor"), who at one time, together with Beverly Ackerson ("Ackerson"), partially owned a piece of real property located in Stillwater, New Jersey ("Property"). The Currents ("Appellants") were first priority mortgagees of the Property. When Ryker and Ackerson failed to make payments and subsequently defaulted on the mortgage, the Appellants obtained a foreclosure judgment in the amount of $219,084.26. A Sheriff's Sale was initially scheduled for March 15, 1999. A Notice of Sheriff's Sale ("Notice of Sale") was published in two newspapers, the New Jersey Herald and the New Jersey Sunday Herald. The Notice of Sale was also posted in the sheriff's office. The Notice of Sale stated the amount necessary to satisfy the foreclosure judgment as the "approximate amount of $219,084.26, in addition to interest, Sheriff's fees and advertising costs." After Ryker and Ackerson exercised their statutory adjournments to postpone the sale until April 12, 1999, Appellants and Ryker and Ackerson entered into a Forbearance Agreement. Under the Forbear-

ance Agreement, the Appellants received $150,000, payment of attorney fees amounting to $7,575.06 and establishment of an escrow amounting to $7,500 for payment of the Sheriff's Centage Fee and anticipated property taxes. In addition, Ryker and Ackerson were obligated to make monthly payments of $1,654.34, and the Appellants agreed to adjourn the sale on a monthly basis. In the event of default, the Forbearance terms were deemed to automatically terminate.

Ryker and Ackerson failed to make the October 1, 1999 payment, and the Sheriff's Sale was subsequently held on October 25, 1999, at which the Appellants were the successful bidders. On the sale date, counsel for the Appellants advised the sheriff that a credit of $169,605.40 should be given against the amount due of $219,084.26 listed in the original Notice of Sale. There was no re-notice or re-advertisement prior to the actual sale date reflecting that the approximate amount now due to satisfy the foreclosure judgment had decreased by nearly $170,000. The Appellants were the only bidders at the foreclosure sale and bid $100.00 over their lien for the Property.

On November 3, 1999, nine days after the Sheriff's Sale, Ryker filed his voluntary petition for relief pursuant to Chapter 13 of Title 11 of the United States Code ("Bankruptcy Code"). Appellants then filed a Notice of Motion for Entry of an Order Deeming Certain Real Property Not Property of the Estate and For Present and Prospective Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d) of the Bankruptcy Code. The Debtor opposed this motion by alleging that the foreclosure sale should be set aside as a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B) due to the inadequacy of price. The Bankruptcy Court found that the Debtor made a credible showing that

§ 548 was applicable and therefore denied the motion and directed the Debtor to file the instant adversary proceeding. On March 30, 2000, Debtor filed an adversary complaint against Appellants. Appellants moved to dismiss the complaint for lack of jurisdiction, or in the alternative, for abstention from hearing the case. Debtor then filed a crossmotion for summary judgment, contending that the Sheriff's Sale is voidable under § 548 because a defect in the notice of sale resulted in an inadequate sales price. The Bankruptcy Court found that the foreclosure sale of the Property was not conducted in accordance with New Jersey foreclosure law due to the absence of proper notice, and thus, pursuant to § 548(a)(1)(B), the foreclosure sale constituted a fraudulent transfer. Appellants appeal from the Order granting Debtor's cross-motion for summary judgment.

### DISCUSSION

**A. Chapter 13 Debtor Standing Under 11 U.S.C. § 548**

Although Appellants argue that the Bankruptcy Court erred in ever reaching the merits of the Debtor's § 548 avoidance action, Appellants never maintain that a Chapter 13 debtor lacks standing to bring a fraudulent transfer action pursuant to § 548. Appellants' challenges to the jurisdiction of the Bankruptcy Court to adjudicate the Debtor's § 548 avoidance action rest on other grounds, all of which are not relevant to the issue of standing. Notwithstanding the failure of Appellants to raise this issue with either the Bankruptcy Court or this Court on appeal, the Court believes that standing is an issue that must be addressed by the Bankruptcy Court prior to its consideration of the merits of the Debtor's avoidance action, in light of the plain language of § 548, which affirmatively confers standing only on Chapter 13

trustees. *See* 11 U.S.C. § 548 ("[t]he trustee may avoid any transfer of an interest of the debtor in property . . .").

 Standing is subject to review at all stages of litigation because a lack of standing undermines the jurisdiction of not only the bankruptcy court, but also the district court acting as an appellate tribunal. *See In re Dionisio,* No. 02–3020, 80 Fed.Appx. 285 (3d Cir. Apr. 17, 2003) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 546–47, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)). In *In re Dionisio,* neither this Court nor the Bankruptcy Court considered the issue of standing and, on appeal, the Third Circuit held that, in the context of a Chapter 7 proceeding, the debtor lacked standing because the trustee alone had standing to raise certain issues before the bankruptcy court and to prosecute appeals. The result was a waste of judicial resources. The Court therefore hopes to avoid a possible similar outcome by affording the Bankruptcy Court the opportunity to consider whether the Debtor had standing to exercise the trustee's avoidance powers and thereby commence the fraudulent transfer action pursuant to § 548.

While the Bankruptcy Court directed the Debtor to bring this § 548 adversary proceeding, it did not expressly consider whether the Debtor had standing to seek avoidance of the foreclosure sale. In a limited context, a Chapter 13 debtor undoubtedly does have standing to initiate an avoidance action when the property to be reclaimed or recaptured is exempt from execution. *See* 11 U.S.C. § 522(h). That a Chapter 13 debtor may commence a § 548 avoidance action pursuant to § 522(h) is beyond dispute. However, the record does not indicate whether the Debtor's avoidance action is based, at least in part, on an exemption claim; and thus, it is not clear whether the Debtor can utilize this avenue to commence this § 548 avoidance proceeding.[1]

There are two lines of cases adopting contradictory and opposing views as to whether a Chapter 13 debtor enjoys *independent* standing to exercise the avoidance powers of the trustee, including the power to avoid fraudulent transfers pursuant to § 548. The majority of cases that have addressed this specific issue hold that although § 522(h) allows a Chapter 13 debtor to bring a fraudulent transfer action when the property to reclaimed is exempt from execution, Chapter 13 debtors do not have independent standing to exercise the trustee's avoidance powers. *See, e.g., In re Stangel,* 219 F.3d 498 (5th Cir.2000), *cert. denied,* 532 U.S. 910, 121 S.Ct. 1240, 149 L.Ed.2d 147 (2001) (Chapter 13 debtor-taxpayer lacked standing to avoid IRS tax lien, since Bankruptcy Code provision governing power to avoid statutory liens did not expressly confer power on anyone besides trustee); *In re Merrifield,* 214 B.R. at 365 ("The Eighth Circuit has determined that the statutory language of § 548 expressly confers avoidance powers exclusively on the trustee."); *In re Miller,* 251 B.R. 770 (Bankr.D.Mass.2000) (Chapter 13 debtors did not have standing, independent of that granted under bankruptcy exemption provision, to bring adversary

---

**1.** Both the Eighth and Ninth Circuits have adopted a five part test to determine whether a debtor may exercise avoidance powers under § 522(h). Under this five part test, a debtor may avoid a transfer if (1) the trustee did not attempt to avoid the transfer; (2) the debtor did not conceal the property; (3) the debtor's transfer was involuntary; (4) the debtor seeks to exercise an avoidance power enunciated under 11 U.S.C. § 522(h); and (5) the transferred property could have been exempted if the trustee had avoided the transfer under the provisions of § 522(g). *In re Merrifield,* 214 B.R. 362, 365 (8th Cir. BAP 1997) (citing *In re DeMarah,* 62 F.3d 1248 (9th Cir.1995)).

proceeding to recover their voluntary pre-petition payment to creditor as preference); *In re Montoya*, 285 B.R. 490 (Bankr.D.N.M.2002) (Chapter 13 debtor did not have standing to bring fraudulent transfer avoidance proceeding in order to avoid mortgage on nonresidential real property, when there was no indication that this property was exempt); *In re Dudley*, 38 B.R. 666 (Bankr.M.D.Pa.1984) (Chapter 13 debtor has proper standing to commence a § 548 action only pursuant to § 522(h)); *In re Compton*, 1998 WL 372659 (Bankr.E.D.Pa.1998) (Chapter 13 debtor's rights and powers are specifically prescribed in § 1303 and the power to exercise the trustee's avoidance powers is conspicuously absent).

However, there are a number of cases which hold that a Chapter 13 debtor does have standing, independent of § 522(h), to exercise the avoidance powers of the trustee. The rationale for these cases appears to be a pragmatic one, based on the realities of the bankruptcy practice and the Chapter 13 trustee's lack of incentive to bring such actions. *See, e.g., In re Ottaviano*, 68 B.R. 238 (Bankr.D.Conn.1986) (Chapter 13 debtor had independent standing to bring action to avoid fraudulent transfer); *In re Ciavarella*, 28 B.R. 823 (Bankr.S.D.N.Y.1983) (Chapter 13 debtor is the entity most appropriately stationed to reclaim those avoidable transfers whose recovery would further debtor's rehabilitative interests).

It should also be noted that a recent United States Supreme Court decision appears to cast doubt upon those cases conferring independent standing on Chapter 13 debtors to commence fraudulent transfer avoidance actions, notwithstanding the wording of the statute which expressly gives that power only to the trustee. In *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, the Supreme Court

held that § 506(c) of the Bankruptcy Code, which provides that a trustee may recover, from property securing an allowed secured claim, the costs and expenses of preserving such property, did not provide an administrative claimant an independent right to seek payment of its claim from property encumbered by a secured creditor's lien. 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). The Court noted that Congress "'says in a statute what it means and means in a statute what it says.'" *Id.* at 6, 120 S.Ct. 1942 (citations omitted). Furthermore, the Court stated that when the statute's language is plain, "the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.* (citations and internal quotation marks omitted). The Fifth Circuit has found that although the Court was considering a different provision of the Bankruptcy Code in the context of a Chapter 11 case, the Court's reasoning was fully applicable to a § 548 avoidance action by a Chapter 13 debtor. *In re Stangel*, 219 F.3d at 501.

To further complicate matters, the Third Circuit, interpreting a similar provision of the Bankruptcy Code which vests exclusive standing in the trustee, has very recently held that *Hartford Underwriters* did not prevent the Bankruptcy Court from authorizing a derivative suit by a creditors committee to recover property for the benefit of the estate. *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir.2003). Despite the fact that there was no specific statutory authority granting creditors committee standing, as § 544 authorized only the trustee to take the prescribed avoidance actions, the Third Circuit found that several Bankruptcy Code provisions, pre-Code practice, public policy and the Bankruptcy Court's equitable powers all combined to afford the creditors commit-

tee "derivative" standing under § 544. Of particular import here, the Third Circuit unequivocally recognized the broad powers of the Bankruptcy Courts as courts of equity. "While the question in *Hartford Underwriters* was one of a *nontrustee's right* unilaterally to circumvent the Code's remedial scheme, the issue before us today concerns a *bankruptcy court's equitable power* to craft a remedy when the Code's envisioned scheme breaks down." *Id.* at 553.

Here, the Bankruptcy Court expressly invited the Debtor to bring this § 548 avoidance action; nonetheless, because the Bankruptcy Court did not expressly consider standing, the Court will afford the Bankruptcy Court the first opportunity to consider the breadth of its own equitable powers, in light of the Third Circuit's decision in *Chinery,* the Supreme Court's decision in *Hartford Underwriters,* and the decisions of other courts with respect to a Chapter 13 debtor's independent standing to bring avoidance actions.

Accordingly, the Court will remand this matter to the Bankruptcy Court to determine whether the Debtor had standing to bring this fraudulent transfer action pursuant to 11 U.S.C. § 548. The Court, consequently, cannot rule on the Debtor's cross-motion for summary judgment. Yet, to foster the efficient allocation of judicial resources, the Court deems it beneficial to proffer its opinion respecting the substantive issues raised in this appeal. As such, these issues are discussed below.

## B. Bankruptcy Court's Grant of Debtor's Cross–Motion for Summary Judgment

### 1. Standard of Review

The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal. Legal conclusions of a bankruptcy court are subject to de novo or plenary review by the district court. *Donaldson v. Bernstein,* 104 F.3d 547, 551 (3d Cir.1997); *Chemetron Corp. v. Jones,* 72 F.3d 341, 345 (3d Cir.1995), *cert. denied,* 517 U.S. 1137, 116 S.Ct. 1424, 134 L.Ed.2d 548 (1996). The factual determinations of the bankruptcy court are not to be set aside unless "clearly erroneous." *Fed. R. Bankr.P.* 8013; *Chemetron Corp.,* 72 F.3d at 345; *In re Indian Palms Associates, Ltd.,* 61 F.3d 197, 203 (3d Cir.1995). This appeal involves a review of a grant of summary judgment, a purely legal determination; and so, the Court applies a de novo standard of review, which compels the Court to reapply the summary judgment standard.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Fed. R.Civ.P.* 56; *Serbin v. Bora Corp.,* 96 F.3d 66, 69 n. 2 (3d Cir.1996). In evaluating a summary judgment motion, a court must "draw all reasonable inferences in favor of the non-moving party." *Armour v. County of Beaver, PA,* 271 F.3d 417 (3d Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). A motion for summary judgment requires the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Albright v. Virture,* 273 F.3d 564, 570 n. 6 (3d Cir. 2001). Appellants admit that there are no disputed issues of fact in this matter. Instead, the appeal challenges the Bankruptcy Court's determination that the Sheriff's Sale should be set aside because the defect in the notice of sale amounted to such an irregularity that the price received on the

day of the sale was not reasonably equivalent to the Property's actual value. If the Court were to rule on this issue, the Court would affirm the Bankruptcy Court's determination that the foreclosure sale constituted a fraudulent transfer pursuant to 11 U.S.C. § 548.

### 2. 11 U.S.C. § 1322 and Debtor's Right to Cure the Mortgage

■ Appellants first contend that the Bankruptcy Court erred in granting the Debtor's cross-motion for summary judgment since the Sheriff's Sale extinguished the Debtor's right to cure the mortgage. Appellants devote particular attention to 11 U.S.C. § 1322, which generally gives a debtor the right to cure a mortgage on a principal place of residence until such residence is sold at a foreclosure sale. *See* 11 U.S.C. § 1322(c)(1). Indeed, Appellants consider the applicability of § 1322 to the particular circumstances of this case as the "central issue" before the Court. But as the Debtor correctly points out, the Debtor is not seeking to cure a mortgage on a principal residence. Rather, the Debtor is seeking to set aside a foreclosure sale pursuant to 11 U.S.C. § 548. Whether or not a debtor may cure a default under § 1322 bears no relationship to whether a debtor may avoid a foreclosure sale as a fraudulent transfer under § 548. These constitute two separate and distinct issues, and the Debtor's adversary proceeding raises no issue with respect to a debtor's right to cure a default. As such, Appellant's reliance on § 1322 is misplaced.

### 3. Timeliness of Debtor's Objection to the Sheriff's Sale

■ Appellants also argue that the Bankruptcy Court erred in reaching the merits of Debtor's § 548 action since the Debtor failed to comply with *R.* 4:65–5 and 11 U.S.C. § 108(b). *See R.* 4:65–5 (allowing objection to a sale if served "within 10 days after the sale or at any time thereafter before the delivery of the conveyance") and 11 U.S.C. § 108 (extending time period in which a debtor may cure a default or take such similar action for 60 days from order for relief). The Debtor filed his Chapter 13 petition nine days after the Sheriff's Sale and this, according to Appellants, triggered § 108(b), which then extended the Debtor's time to object or redeem for only an additional 60 days. Debtor failed to do so, and as a result, Appellants contend that the Debtor "sat on his rights" and can no longer maintain this avoidance action.

Appellants correctly maintain that the mere filing of a Chapter 13 petition does not constitute an objection to sale under *R.* 4:65–5. *See In re Simmons,* 202 B.R. 198, 205 (Bankr.D.N.J.1996) (citations omitted). Nonetheless, Appellants' argument fails on at least two grounds. First, Appellants confuse the right to redeem with the right to object by misinterpreting the essential holding in *Hardyston Nat. Bank v. Tartamella,* 56 N.J. 508, 267 A.2d 495 (1970). New Jersey does not have a statutorily created right to redemption; however, in *Hardyston,* the New Jersey Supreme Court held that a mortgagor could exercise a right to redemption within the ten day period fixed by *R.* 4:65–5 for objections to sale and until an order confirming the sale if objections were filed under the rule. *See id.* at 512, 267 A.2d 495 (noting that since under court rules confirmation of sale is automatic by the passage of ten days without an objection filed, the mortgagor's absolute right to redemption terminates after ten days). The *Hardyston* Court exercised its equitable power to create a right of redemption, and as creator of that right, defined the relevant contours, including the time period in which that right must be exercised.

Appellants cite to the following passage from a 1996 Bankruptcy Court decision for the proposition that the right to object is also extinguished after ten days from the sale date:

> In light of the foregoing authority, it appears to the court that after a foreclosure sale a purchaser has largely acquired all of the rights and liabilities of ownership by virtue of having equitable title. All that remains to be conveyed is legal title, which is held in trust until delivery of the deed. Accordingly, the sale is final, but subject to defeasance by a proper objection to sale or redemption by the debtor within ten days of the sale. Nothing in the *Hardyston* decision dictates a different result.

*In re Simmons*, 202 B.R. 198, 205 (Bankr. D.N.J.1996).

Appellants' reliance on this particular passage is misleading. A proper reading of this passage, when read in conjunction with the entirety of the Bankruptcy Court's opinion, is that "within ten days of the sale" only modifies the right to redemption; the time period for objecting to the sale is determined solely by the plain language of *R.* 4:65–5. Another passage from the Bankruptcy Court's opinion illustrates this point:

> The equitable title acquired by a purchaser at a foreclosure sale is subject to defeasance only if an objection to sale made pursuant to New Jersey Court Rule 4:65–5 is sustained, *or pursuant to Hardyston . . ., the foreclosed mortgagor exercises the right of redemption within ten days after the sale.*

*Id.* at 204 (emphasis added).

If the right to redemption were identical to the right to objection, then part of this passage would be entirely superfluous. That the *Hardyston* Court limited the right to redeem to the ten day period found in *R.* 4:65–5 in no way compels the

conclusion that the Court intended to alter the time period for objections to sale, which the Rule unambiguously fixes at "ten days after the sale *or at any time thereafter before delivery of the conveyance.*" *R.* 4:65–5 (emphasis added); *see also Union County Savings Bank v. Johnson*, 210 N.J.Super. 589, 593–4, 510 A.2d 288 (Ch.Div.1986) (noting that defaulting mortgagor has ten days following the sale or until delivery of the deed to take affirmative action in objection to the sale). Moreover, the Appellants rely heavily on isolated passages extracted from *In re Simmons*, but the issue there, to wit, the debtor's right to cure a default, is inapposite to the issue here. Neither *Hardyston* nor *In re Simmons* forbid a debtor from filing a § 548 avoidance action prior to the delivery of the conveyance. And because the record reveals that the deed was never conveyed prior to the Debtor's filing of the adversary complaint, which clearly constituted an objection to the sale, the Debtor's right to object never expired. Hence, *R.* 4:65–5 does not preclude the Debtor from maintaining this avoidance action.

▬ Second, even if the Debtor did not comply with the provisions of *R.* 4:65–5 and is therefore ostensibly precluded by court rule from bringing this avoidance action, the Courts of Chancery in New Jersey, quite independent of statute or rule of court, "have inherent power to set aside a sale . . . when there is an independent ground for equitable relief, such as fraud, accident, surprise, irregularity in the sale, and the like." *Orange Land Company v. Bender*, 96 N.J.Super. 158, 232 A.2d 679 (App.Div.1967); *see also Crane v. Bielski*, 15 N.J. 342, 346, 104 A.2d 651 (1954) (noting that Chancery Court has inherent power to set aside a mortgage foreclosure sale, but its exercise must rest on some consideration of justice, such as fraud or irregularity of sale). In this

case, the very basis of the Debtor's avoidance action and of the Bankruptcy Court's decision to set aside the sale is that the defect in notice amounted to such an irregularity in sale as to constitute constructive fraud under § 548. Thus, the Court believes that, if the Debtor's § 548 action is meritorious, the Bankruptcy Court properly exercised its equitable powers, pursuant to New Jersey law, in reaching the merits of this matter and setting aside the foreclosure sale.

### 4. The Merits of Debtor's § 548 Action: Notice of Sale and Competitive Bidding

The substance of Appellants' argument with respect to the merits of this matter is that the Bankruptcy Court's finding that the Sheriff's Sale was not advertised and posted in a manner designed to insure the opportunity for competitive bidding is erroneous. The Court disagrees.

 Section 548 of the Bankruptcy Code sets forth the power of a trustee in a bankruptcy proceeding to avoid fraudulent transfers. *See* 11 U.S.C. § 548. The section "permits avoidance if the trustee can establish (1) that the debtor had an interest in the property; (2) that the transfer of that interest occurred within one year of the filing of the bankruptcy petition; (3) that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) the debtor received 'less than a reasonably equivalent value in exchange for such transfer.' " *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (citing 11 U.S.C. § 548(a)(2)(A)).[2] This matter focuses on the last of these four elements and revolves around the validity of the Bankruptcy Court's determination that the Debtor failed to receive a "reason-

ably equivalent value" at the foreclosure sale. A salient issue, therefore, is the proper meaning of "reasonably equivalent value."

In *BFP*, the Supreme Court addressed the issue of whether a foreclosure sale could be set aside as having resulted in less than "reasonably equivalent value." In particular, the Court stated that market value cannot be the criterion of equivalence in a foreclosure sale context because the property that is sold pursuant to the terms and conditions of a foreclosure sale is simply worthless. *Id.* at 539–40, 114 S.Ct. 1757. The Court then held that it:

> decline[s] to read the phrase 'reasonably equivalent value' in § 548(a)(2) to mean, in its application to mortgage foreclosure sales, either 'fair market value' or 'fair foreclosure price' (whether calculated as a percentage of fair market value or otherwise). We deem, as the law has always deemed, that a fair and proper price, or 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with.

*Id.* at 545, 114 S.Ct. 1757.

As the Bankruptcy Court noted, though the holding of *BFP* certainly narrowed the grounds on which § 548 could be used to invalidate a foreclosure sale as a fraudulent transfer, it did not completely frustrate its use. The Supreme Court stated that:

> Any irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law deprives the sale price of its conclusive force under § 548(a)(2)(A), and the transfer may be avoided if the price

---

**2.** In 1998, this section was amended by the Religious Liberty and Charitable Donation Protection Act of 1998, and as a result, former § 548(a)(2)(A) is now § 548(a)(1)(B).

received was not reasonably equivalent to the property's actual value at the time of the sale (which we think would be the price that would have been received if the foreclosure sale had proceeded according to law).

*Id.* at 545–46, 114 S.Ct. 1757.

 Thus, under *BFP*, the Court must determine whether the foreclosure sale was conducted in accordance with the foreclosure law of the State of New Jersey. If the Court finds that the foreclosure sale was in fact conducted in accordance with New Jersey law, then the Debtor's § 548 action fails, notwithstanding the apparent inadequacy of the sales price. However, as discussed more fully below, the Court believes that the defect in the Notice of Sale was of such a magnitude that it chilled competitive bidding, thwarted the purpose of foreclosure sales in New Jersey, and, as a result, violated New Jersey foreclosure law.

Pursuant to *N.J.S.A.* 2A:17–34, the notice of sale must specify the approximate amount of the judgment to be satisfied by the sale. In addition, *R.* 4:65–2 requires not only that the sale be advertised in two newspapers, but also that the notice of sale be posted in the sheriff's office. Appellants contend that the notice was proper when originally advertised in February and March of 1999, and nothing in either statute or rule required that the sale be re-advertised in the newspapers or that a corrected notice be posted in the sheriff's office. Appellants argue that the Sheriff did comply with the literal terms of both the statute and the rule. Moreover, Appellants state that the Notice of Sale provided that the sale was to be held on "March 15, 1999 or the adjourned date thereafter," and that under *N.J.S.A.* 2A:61–6, which provides that a notice of adjournment must be published within one week of the date of adjournment unless

the original advertisement of the sale specifically reserved the right to adjourn the sale, no further notice of adjournment was needed. Finally, as permitted by *R.* 4:65–4, which provides that the sheriff may continue a sale by public adjournment, the Sheriff announced at the original sale date that the sale was adjourned and gave a new sale date. The Appellants therefore conclude that the procedures followed by the Sheriff in selling the property were proper and that sale of the Property was valid.

 The Court, however, agrees with the Bankruptcy Court that the critical facts are somewhat unique, and that proper resolution of this matter requires the Court to look beyond the literal wording of the relevant statutes and court rules. The statute and court rules are silent on the issue of re-advertisement. Appellants suggest that this silence is tantamount to a legislative proclamation that re-advertisement is never required under New Jersey law. The Court refuses to adopt such a narrow view of New Jersey law, but is also unwilling to make a general pronouncement regarding when an adjourned sale must be re-advertised. It believes that under the particular factual circumstances, especially when considered in light of a substantial body of case law treating foreclosure sales, re-advertisement was not only both fair and proper, but also required by New Jersey foreclosure law.

 To begin with, the purpose of a foreclosure sale in New Jersey is "to obtain the highest price for the benefit of the foreclosing mortgagee, other junior lienholders and, perhaps, the owner-mortgagor." *Investors & Lenders, Ltd. v. Finnegan,* 249 N.J.Super. 586, 592, 592 A.2d 1244 (Ch.Div.1991); *see also Carteret Savings & Loan Association, F.A. v. Davis,* 105 N.J. 344, 348, 521 A.2d 831 (1987) (recognizing that judicial sale developed as

a means of assuring that fair value would be received for property). The Court recognizes that under New Jersey law setting aside judicial sales should be done sparingly. *See Karel v. Davis*, 122 N.J.Eq. 526, 529, 194 A. 545 (1937); *see also Federal Title & Mortgage Guaranty Co. v. Lowenstein*, 113 N.J.Eq. 200, 166 A. 538 (Ch. 1933) (noting that bidding is encouraged by "giving to every bidder the benefits of bids made in good faith and without collusion or misconduct"). This form of judicial interference is warranted only when necessary to correct a plain injustice; that is to say, where it would be inequitable and unjust not to set aside the sale due to fraud, accident, surprise, mistake or irregularities in the conduct of the sale. *Froehlich v. Walden*, 66 N.J.Super. 390, 395–6, 169 A.2d 204 (Ch.Div.1961). Inadequacy of price alone does not ordinarily justify the vacation of a foreclosure sale. *See Karel*, 122 N.J.Eq. at 530, 194 A. 545. But where an inadequate price is determined to be a product of an ineffective notice of sale, courts have found it appropriate to set aside a foreclosure sale. *Burger v. Dumas*, 25 N.J.Super. 473, 96 A.2d 718 (Law Div.1953) (sheriff sale set aside because sheriff erroneously announced existence of a judgment lien and failed to disclose amount due on mortgage, thereby "thwarting competitive bidding"); *First Mutual Corp. v. Samojeden*, 214 N.J.Super. 122, 518 A.2d 525 (App.Div.1986) (sale should be set aside because absence of required notice deprived interested parties not only of opportunity directly to protect themselves but also of benefits which competitive bidding provides).

What is more, courts have set aside foreclosure sales due to ineffective notice notwithstanding literal compliance with the governing statutes and court rules. In *Cummins v. Little*, although the sheriff formally complied with the letter of the statute by posting notice in five separate public places, the places selected for these advertisements could not have been chosen by a "discreet man, desirous of effecting a sale ... to the greatest advantage;" and so, the sheriff abused his discretion, and this amounted to constructive fraud, against which equity provided relief. 16 N.J. Eq. 48, 1863 WL 2615, at *4 (Ch. 1863). The Court further noted that "in effecting the sale, [the sheriff] is bound to conduct it so as to protect the rights and promote the interests of all the parties in interest, and to this end to secure, as far as practicable, the most general diffusion of the notice of sale." *Id.* Similarly, in *Hodgson v. Farrell*, the Court found the notice of sale to be inaccurate and misleading despite the fact that the notice was in "technical compliance with the requirement of the statute." 1862 WL 2733, *3 (N.J.Ch.1862). The Court opined that the "character of the description, in connection with the fact that there were no bidders at the sale, and that the property sold at a very inadequate price," made the sale constructively fraudulent. *Id.* In both of these cases, the literal or formal compliance with the governing statutes and rules did not necessitate the conclusion that the notice was thereby adequate or effective. The notice was undoubtedly inadequate and ineffective; and both Courts, in refusing to elevate form over substance, rightly exercised their equitable powers to correct an injustice and protect the interests of all parties affected by the respective sales.

In this matter, there also seems to be literal or technical compliance with the governing statutes and rules, since the Property was both advertised and posted in accordance with New Jersey law in February and March of 1999. The Court agrees with Appellants that nothing in the statutes or court rules expressly require that the sale be re-advertised or posted anew. Nonetheless, the crucial and deter-

minative fact is that by the time the foreclosure sale sent went forward on October 25, 1999, over 75% of the amount stated in the Notice of Sale as due was already paid. The Notice of Sale, then, was obviously inaccurate. Appellants casually dismiss such inaccuracy by proclaiming that the letter of the statute and court rule do not require readvertisement. Principles of fundamental fairness, however, which dictated the outcome in both the *Cummins* and *Hodgson* decisions, stand manifestly opposed to such a rigid viewpoint. The Bankruptcy Court rightly observed that at the time of the eventual sale, in contrast to February 1999 when the notice was originally advertised, there was substantial equity in the Property. Because there was no re-advertisement of the sale, the only persons aware of this fact were the Appellants. This enabled the Appellants, who were the only bidders at the sale, to receive property with a value exceeding $200,000 for roughly $50,000. The Court views this as a windfall, and one that could have been easily avoided by re-advertising the sale to reflect the correct amount of the outstanding judgment debt.

The Court agrees with the Bankruptcy Court's observation that, from the perspective of a prospective bidder, the failure in the Notice of Sale to make proper disclosure of the exact amount due to satisfy the foreclosure judgment created a serious disincentive to engage in the bidding process. Because of the defect in the Notice of Sale, prospective bidders believed that the amount due to satisfy the foreclosure debt was approximately $220,000, when at the time of the actual sale the amount due was only $50,000. The disparateness between having to bid roughly $220,000 versus only $50,000 in order to satisfy the judgment debt, and the concomitant effect on potentially interested bidders, is rather obvious. This is confirmed by the fact that Appellants were the sole bidders at the

sale; and therefore, it is evident that the defect in notice thwarted competitive bidding and undermined the fundamental purpose of foreclosure sales.

Appellants submit that the Bankruptcy Court's opinion as it relates to the re-advertisement of the adjourned sheriff's sale misstates the applicable state law; and yet, the Appellants make no mention of either the *Cummins* or *Hodgson* decisions. Instead, Appellants focus their attack on the Bankruptcy Court's reliance on *First Mutual Corp. v. Samojeden.* In *Samojeden*, the Appellate Division considered whether a notice of sale given pursuant to *R.* 4:65–2 binds the noticed parties for all time thereafter, irrespective of when the sale is actually held and irrespective of their actual knowledge of the eventual sale date. The Court held that, as a matter of fundamental fairness, the governing rules must be construed as entitling interested parties to actual notice of the adjourned date upon which the sale actually takes place. 214 N.J.Super. 122, 518 A.2d 525 (App.Div.1986). The Court found that what happened was tantamount to a private sale to the foreclosing mortgagee since members of the public at large, including, in particular, a junior mortgagee, "who might have been interested in attending the sale and bidding for the property could hardly have been expected to respond to a publication and posting effected 13 months previously and directed to a date long since past." *Id.* at 127, 518 A.2d 525. Most importantly, the Court stated:

> Although we recognize that our rules do not expressly provide for the giving of notice of adjourned sales, we are nevertheless persuaded that their implicit predicate is the affording of actual knowledge of the effective sale date to those persons whose interests would be irrevocably affected by the sale and,

most particularly, the owners and encumbrancers of the property whose equity and investment are likely to be lost unless they take the protective action of either redeeming after the sale or purchasing at the sale. We so conclude for obvious jurisprudential reasons. *Effective notice is the cornerstone of procedural due process.* Our rules of court are construed on that cornerstone and the focus of their interpretation must be consistent with that overriding concern. *Id.* at 126, 518 A.2d 525 (emphasis added).

Appellants, however, point out that the *Samojeden* Court addressed a distinct issue and declined to make any general pronouncement regarding whether, and under what circumstances, notice of an adjourned sale is required to be re-advertised or re-posted or served in a formal manner in compliance with *R.* 4:65–2. *See id.* at 129, 518 A.2d 525. This is certainly true, but the essential principle underlying the Appellate Division's decision is that effective notice is the cornerstone of procedural due process, and this is especially relevant to this matter. The Appellate Division construed the governing rules to comport with underlying principles of fairness. Hence, *Samojeden,* when considered against the background of *Cummins* and *Hodgson,* supports the conclusion that the Sheriff's Sale should have been re-advertised and posted in a manner designed to insure the opportunity for competitive bidding. There was no re-advertisement, and the notice of sale was therefore both inaccurate and ineffective.

Finally, the Bankruptcy Court noted that relief is also warranted because the Debtor's equity of redemption was completely impaired. If the property interest of a junior mortgagee was entitled to the heightened protection given to it by the *Samojeden* Court, then, the Bankruptcy Court reasoned, the equity of redemption,

which is a favored right in New Jersey, must be entitled to at least the same protection. Appellants contend that for this Court to affirm the Bankruptcy Court as to the "complete impairment" of the debtor's "exemption," this Court must first determine that the Property was property of the estate pursuant to 11 U.S.C. § 541. The Appellants, however, in focusing on exemptions, appear to miss the point. The "equity of redemption" is the value of the land above the loan. *See Carteret Savings and Loan Association v. Davis,* 105 N.J. 344, 347, 521 A.2d 831 (N.J.1987) (equity of redemption is the valuable right that came to be seen as an equitable estate in land that was alienable, devisable and descendible). In addition, the foreclosure of the "equity of redemption," for purposes of § 548, constitutes a "transfer of an interest of the debtor in property." *See* 11 U.S.C. § 548(a)(1); 11 U.S.C. § 101(54). In this context, the Bankruptcy Court was merely stating that such an interest, in light of the Appellate Division's rationale in *Samojeden,* is entitled to heightened protection where it is apparent that this interest is unjustly or inequitably impaired. In such instances, § 548 provides a channel of redress. The equity of redemption, in this sense, bears no relevance to "exemptions" or § 541.

Accordingly, the Court believes that the defect in the Notice of Sale constituted such an irregularity in the conduct of the sale under New Jersey law that it deprived the sales price of its conclusive force under § 548. And because the price received at the foreclosure sale was not reasonably equivalent to the actual value of the Property at the time of the sale, the Bankruptcy Court was correct in granting the Debtor's cross-motion for summary judgment and setting aside the sale as a fraudulent transfer pursuant to § 548. If given the opportunity to rule on the Bankruptcy

Court's grant of Debtor's cross-motion for summary judgment, the Court would affirm.

## *CONCLUSION*

The Court believes that, assuming the Debtor had standing to bring this avoidance action, the Bankruptcy Court's grant of Debtor's cross-motion for summary judgment was proper. However, because the Bankruptcy Court failed to expressly consider the issue of standing before granting Debtor's cross-motion for summary judgment, the Court must reverse and remand. Accordingly, **IT IS** on this 13th day of August, 2003 **ORDERED** that the judgment of the Bankruptcy Court is reversed and the matter is remanded for consideration of the issue of standing.