

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-26-2007

# In Re: Edward Ryker

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1872

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

## Recommended Citation

"In Re: Edward Ryker " (2007). *2007 Decisions*. Paper 698.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/698

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 06-1872

————

IN RE EDWARD J. RYKER,

Appellant

————

On Appeal from the United States District Court
for the District of New Jersey
(05-cv-02977)
District Judge: Honorable William J. Martini

————

Argued June 27, 2007

Before: BARRY, FUENTES and JORDAN, Circuit Judges.

(Filed: July 26, 2007)

Dean G. Sutton (Argued)
18 Green Road
P.O. Box 187
Sparta, NJ 07871

      Counsel for Appellant

Melinda D. Middlebrooks (Argued)
Middlebrooks, Shapiro, & Nachbar
1767 Morris Avenue
Suite 2A
Union, NJ 07083

     <u>Counsel for Appellees</u>

———

OPINION OF THE COURT

———

FUENTES, <u>Circuit Judge</u>.

In this bankruptcy appeal, Edward J. Ryker, a Chapter 13 debtor, disputes a claim for attorneys' fees incurred by David and Denise Current ("the Currents") in connection with the sale of commercial property on which the Currents held a mortgage. Both the Bankruptcy Court and the District Court concluded that the Currents were entitled to the fees. For the reasons that follow, we will affirm.

**I.**

After nearly ten years litigating this matter, the parties are sufficiently familiar with the facts of the case that we need recount only those necessary to explain our disposition. Edward Ryker partially owned property in Stillwater, New Jersey on which the Currents held a mortgage of about $200,000. Following Ryker's default under the mortgage, the Currents obtained a foreclosure judgment, contemplating an eventual sheriff's sale to satisfy the outstanding debt. Before the sale occurred, however, the

parties entered into a "Forbearance Agreement," under which the Currents promised to forego the sheriff's sale in exchange for an initial payment by Ryker of about $150,000, and ongoing monthly payments of about $1,650. Notably, the Agreement also required Ryker to pay "any . . . attorney's fees incurred by [the Currents] through the completion of this matter as a condition of the final cancellation of the Sheriff's Sale on or before May 26, 2000, contemplating a final Sheriff's Sale date of May 29, 2000." App. at 121.

Ryker defaulted on the Forbearance Agreement, and the Currents decided to pursue the sale of the property. The Currents were the only bidders at the sale, and they purchased the property for about $50,000. Nine days later, Ryker filed a voluntary petition for Chapter 13 bankruptcy protection. The Currents moved for relief from the automatic stay to pursue their rights in the property, but Ryker opposed the motion, alleging that the sheriff's sale should be set aside as a fraudulent transfer.

Extensive litigation ensued over whether the sale could be set aside. The Bankruptcy Court vacated the sale as a fraudulent transfer. In re Ryker, 272 B.R. 602 (Bankr. D.N.J. 2002).[1] On appeal, however, the District Court questioned *sua sponte* whether Ryker had standing to challenge the sale—it therefore remanded to the Bankruptcy Court for that determination. In re Ryker, 301 B.R. 156 (D.N.J. 2003). The

---

[1] The notice for the sale stated the amount necessary to satisfy the foreclosure judgment as (approximately) $220,000, even though a credit of (approximately) $170,000 was due (because of Ryker's payments). Id. at 604, 607. The Court determined that, because this inadequacy in notice led to an inadequate price, the sale was a fraudulent transfer. Id. at 610-12.

Bankruptcy Court subsequently determined that Ryker did not have standing to avoid the sale, but also determined that the bankruptcy trustee could ratify Ryker's actions. In re Ryker, 315 B.R. 664 (Bankr. D.N.J. 2004). The trustee did so by avoiding the sale.

In the meantime, the Bankruptcy Court had ordered a new sale of the property, which sold for over $200,000. Of that amount, $55,000 was paid to the Currents in satisfaction of their outstanding interest. On November 21, 2004, the Currents submitted a proof of claim to recoup about $95,000 in attorneys' fees they had incurred during the litigation. Ryker sought to prevent payment of these fees.

After a hearing, the Bankruptcy Court determined that, based on the Forbearance Agreement, attorneys' fees were available to the Currents. It then allowed a portion of the fees to be paid as a secured claim, and a smaller portion to be paid as an unsecured claim. On appeal, the District Court affirmed.[2]

## II.

The District Court had jurisdiction under 28 U.S.C. § 158(a) and we have jurisdiction under 28 U.S.C. § 158(d). Exercising the same standards as the District Court, we review the Bankruptcy Court's "legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." In re American Pad & Paper Co., 478 F.3d 546, 551 (3d Cir. 2007).

---

[2] The District Court remanded on the sole issue of whether a portion of the attorneys' fees—those associated with an earlier appeal—was reasonable. In spite of this partial remand, we conclude that we have jurisdiction. Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV, 229 F.3d 245, 250 (3d Cir. 2000).

Having reviewed the various issues presented on appeal, we perceive Ryker to be raising primarily three challenges to the decisions below. First, Ryker argues that the Bankruptcy Court incorrectly construed the Forbearance Agreement as allowing the attorneys' fees claimed by the Currents. Second, he argues that the Court applied the wrong provision of the Bankruptcy Code in calculating the amount of available fees. Third, he argues that it erred in applying federal law in determining whether the Currents' fees were reasonable.[3]

*A.*

Ryker challenges the Bankruptcy Court's determination that the Forbearance Agreement provided for the attorneys' fees incurred by the Currents. As recounted above, the parties agreed in writing that Ryker would pay "attorney's fees incurred by [the Currents] through the completion of this matter as a condition of the final cancellation of the Sheriff's Sale on or before May 26, 2000, contemplating a final Sheriff's Sale date of May 29, 2000." App. at 121. Based on this contractual provision, Ryker argues that his obligation to pay attorneys' fees terminated at the date of the first sheriff's sale.

The Bankruptcy Court disagreed with Ryker's position, stating that "I don't think that the [provision] suggests that the obligation with respect to attorney's fees ceases as of

---

[3] Ryker also argues that the Bankruptcy Court erred in its reasonableness analysis, and that it erred in allowing a portion of the fees as an unsecured claim. After reviewing these arguments, we find them to be without merit.

a sheriff's sale date, [because] you have to read the document as a whole." App. at 399.

Reading the Agreement as a whole, therefore, the Court explained that another provision

of the Agreement—i.e., Paragraph 7—supported the availability of the fees:

> [W]hen you get over to Paragraph 7 . . . it says that if the borrower fails to satisfy all conditions set forth above . . . or . . . if an event of default occurs, [Ryker] will be in default under this agreement . . . and [the Currents] shall have the right to pursue, at [their] discretion, any and all rights to which [they are] entitled, pursuant to the pre-existing loan documents, this agreement, and the interest note, including, but not limited to refiling complaint for foreclosure of the mortgage and collection of the debt.

App. at 399-400. Considering this provision, the Court opined: "[t]hat's a very broad

paragraph, and it was, obviously, intended to give life to the document beyond simply a

default." App. at 400.

The District Court agreed with the Bankruptcy Court's reading of the Agreement.

It pointed out that the parties expressly included Paragraph 7 in order to ensure the right

of the Currents beyond the date of the sheriff's sale: "[Paragraph 7] clearly expresses the

parties' intent to allow the Currents to pursue all of their rights under the Forbearance

Agreement, including the receipt of attorneys' fees, should Ryker default under the

agreement and a foreclosure sale occur." App. at 12. Having considered Ryker's

arguments on appeal, we see no basis for disturbing the lower courts' conclusion that the

Agreement, considered as a whole, provides for the attorneys' fees incurred by the

Currents past the date of the first sale. See In re Cendant Corp. Securities Litigation, 454

F.3d 235, 246 (3d Cir. 2006) ("Although the specific usually controls the general in

contract construction, we are to construe a contract as a whole."). The parties agreed to

ensure the Currents' right to recover any incurred fees through the completion of the matter, and we decline to revise the terms of their bargain.

*B.*

Ryker also argues that the Bankruptcy Court erroneously applied 11 U.S.C. § 506(b) in determining whether the attorneys' fees allowed under the Agreement were available in bankruptcy. He contends that the Bankruptcy Court should have applied 11 U.S.C. § 1322(e), which determines the amount required to cure a default under an agreement.[4] According to Ryker, his bankruptcy plan proposed to "cure" his default on the Forbearance Agreement, and, therefore, § 1322(e) should have been applied.

In spite of Ryker's contentions, his plan simply did not seek to cure his Agreement with the Currents; instead, it sought to fully pay their claim all at once.[5] Notably, in his Chapter 13 Plan, Ryker proposed to pay two *other* secured creditors by paying "the estimated amount necessary to *cure* the default." App. 1087 (emphasis added). He did not, however, address the Currents' claim this way, instead stating that "[their] entire allowed amount . . . will be paid in full." Id. In other words, Ryker's own plan proposed to address other claims by means of a "cure," but did not address the Currents' claim with

---

[4] 11 U.S.C. § 1322(e) provides that "if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."

[5] The Bankruptcy Code does not define the word "cure," but, "by its very nature," the term "assumes a regime where debtors reinstate defaulted debt contracts in accordance with the condition of their contracts." Appeal of Capps, 836 F.2d 773, 777 (3d Cir. 1987), abrogated by Rake v. Wade, 508 U.S. 464 (1993).

any reference to the term.  It is clear that Ryker did not propose to cure a default, and that § 1322(e) is inapplicable.

## C.

After determining that attorneys' fees were allowed under the Agreement, the Bankruptcy Court considered the extent to which those fees were "reasonable" pursuant to § 506(b).  Under that provision, oversecured creditors,[6] like the Currents, are only permitted to "add *reasonable* post-petition, pre-confirmation attorney fees, interest, and costs to the amount of their secured claim." In re Joubert, 411 F.3d 452, 454 (3d Cir. 2005) (emphasis added).[7]  Ryker contends that the Bankruptcy Court's analysis under this provision was erroneous because the Court relied on federal law, rather than state law, in

---

[6] As we have noted, "[t]he Bankruptcy Code does not speak of secured and unsecured creditors, but of allowed secured and unsecured claims." In re Indian Palms Associates, Ltd., 61 F.3d 197, 202 n.6 (citing 11 U.S.C. § 506(a)). "An allowed claim is secured to the extent the value of the collateral equals the claim.  To the extent a claim exceeds the value of the collateral securing it, it becomes an unsecured claim in the bankruptcy case." Id.  When the value of the collateral exceeds the amount of the claim, the creditor is "oversecured."

[7] The provision reads:

> To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).  The parties do not dispute that the Bankruptcy Court was correct in looking to the Forbearance Agreement as the "agreement . . . under which [the] claim arose."

determining what fees were reasonable.

It is clear that § 506(b) governs the reasonableness of the Currents' attorneys' fees, irrespective of conflicting state law. Without reference to non-bankruptcy law, § 506(b) allows for fees to the extent that they are "reasonable." When the provision is applicable, therefore, it preempts conflicting state law regarding attorneys' fees. In re A &P Diversified Technologies Realty, Inc., 467 F.3d 337, 341 (3d Cir. 2006). Because § 506(b) is applicable here, the Bankruptcy Court was not required to look to state law in determining what was reasonable. See In re Kord Enters. II, 139 F.3d 684, 688 (9th Cir. 1998) ("An oversecured creditor need only satisfy the explicit requirements of § 506(b) to obtain attorneys' fees. . . . An analysis of § 506(b) and relevant case law . . . confirms that [it] preempts state law. . . . ").

## III.

For the foregoing reasons, we will affirm the decision of the District Court.

———